## Case No. 9,980.

### MUTUAL LIFE INS. CO. v. WILCOX.

[8 Biss. 203; 17 Alb. Law J. 426; 8 Ins. Law J. 815; 7 N. Y. Wkly. Dig. 13; 5 Reporter, 681; 10 Chi. Leg. News, 269.] [1]

Circuit Court, N. D. Illinois. April 27, 1878.

CORPORATIONS—ULTRA VIRES—DEFENSE TO NOTE —LOANS.

1. Where the charter of a company provides that its surplus funds shall be invested in mortgages on real estate in New York, or in certain classes of bonds, it is not competent for one who in another state has obtained a loan on personal security, nor his surety, to set up in defense the want of power in the company to make the loan.

[Cited in Farmers' Loan & Trust Co. v. Green Bay & Minn. R. Co., 12 Fed. 776.]

[Cited in American Button-Hole, etc., & S. M. Co. v. Moore, 2 Dak. 280, 8 N. W. 135.]

2. Credit for commissions, claimed by an insurance agent from the company cannot be allowed a guarantor of the agent's note in a suit at law; such claim could only be made available in a suit in equity on an accounting.

At law.

M. W. Fuller and F. H. Winston, Jr., for plaintiff.

Geo. W. Smith and E. A. Storrs, for defendant.

BLODGETT, District Judge. This is a suit upon a promissory note executed by Orville Cronkhite, payable to Merrill & Ferguson, and guaranteed by [Sextus N.] Wilcox. The note bears date June 29, 1875, for the sum of $10,000. The facts surrounding the transaction are these: The Mutual Life Insurance Company is a corporation created in the state of New York, and deriving its powers from the charter granted by the state of New York, and certain of the general laws of that state. The provisions of its charter applicable to this case are sections 9, 10, and 11.

"Sec. 9. It shall be lawful for the said corporation to invest the said premiums in the securities designated in the two following sections: * * *

"Sec. 10. The whole of the premiums received for insurance by said corporation * * * shall be invested in bonds and mortgages on unincumbered real estate within the state of New York; the real property to secure such investment of capital shall, in every case, be worth twice the amount loaned thereon.

"Sec. 11. The trustees shall have power to invest a certain portion of the premiums received, not to exceed one-half thereof, in public stocks of the United States, or of this state, or of any incorporated city in this state."

Mr. Cronkhite was the agent of the plaintiff in this city. In the month of June, 1875, he

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission. 8 Ins. Law J. 815, 7 N. Y. Wkly. Dig. 13, and 5 Reporter, 681, contain only partial reports.]

applied to the plaintiff for a loan of money, stating to them that his interests required that he should raise the sum of $10,000; that it was very difficult for him to attend to other business here as their agent, and at the same time make necessary changes in his own affairs. Considerable discussion and correspondence took place between the parties in regard to this matter, and finally the company concluded to let him have the money, and directed Merrill & Ferguson, who were the general agents of the company in the northwest, to advance the money, and the note was taken by Merrill & Ferguson and assigned by them to the company. This note was guaranteed by Mr. Wilcox in due form; and at the same time, and simultaneously with giving the notes, Cronkhite gave to the company an assignment of all his interests in the renewals, as they are called. It was claimed, on the part of the defendant, that Cronkhite, as the agent of the company, had a vested right in the commissions upon the premiums which should be paid upon certain policies which he had placed as the agent of the company.

Shortly after this note was given, or perhaps simultaneously with giving it, the money was remitted to Mr. Cronkhite by Merrill & Ferguson; but Cronkhite continued to collect these premiums and receive them; did not remit to the company, but retained in his own hands all the premiums to which he was entitled as agent of the company from that time on until January, when it was discovered that he was a defaulter for a large amount of premiums collected and not paid over.

It is claimed: First, that this note is ultra vires; that this company had no right to loan this money to Cronkhite on the security of this note; and second, that the company has been reimbursed by the collection of the premiums upon policies which Cronkhite had placed, and upon which he was entitled to commissions.

With reference to the first question—that of the power of the company—there is a class of old cases in the state of New York, which, perhaps, go to the extreme extent of holding that this company, being by its charter directed to invest its funds in a certain manner, all other methods of investing its funds are excluded, and even securities given for such investments are void. But there is no case parallel with this cited by counsel, and I have found none. The later New York cases, and the later cases all through the United States, do not go to the extent of the New York cases cited by the defendant, and I think the settled rule now is, that the question of how this company shall invest its funds, is a question between itself and the sovereignty that created it, and not a question between the borrowers and the company; in other words, that it does not lie in the mouth of this defendant to charge that this security is void. The money was advanced upon the faith of this

security. But whether the company had the power to take this security or not, is a question the defendant has no right to raise.

There is a large number of cases that have arisen lately under the United States national bank act [13 Stat. 99], that are very analogous to this; where the bank is positively prohibited by the act from loaning more than ten per cent. of its capital to any one person, and yet the courts have held that securities given on such loans, in excess of ten per cent. were valid, and that it does not lie in the mouth of the party who borrowed the money of the company to object to a violation of this rule. Any other rule than this would make the policy holders and parties interested in the funds of this company entirely remediless. Suppose that the directors of this corporation, induced by the larger rate of interest which is usually proffered in the western states, or outside of New York, had, instead of loaning their money upon New York state security, seen fit to invest largely in securities in the state of Illinois, would the stockholders have to lose it all, simply because their directors had violated the charter? It would seem to me a very harsh rule to say that the parties interested in this fund should be the losers simply from this violation of the company's charter; a question simply between the sovereignty and the corporation itself.

Some force may also be given to the suggestion that this was an isolated transaction made between the company and its agent, and not a general change in the policy or business of the company. But the same section which I have just read, for instance, requires that the funds of the company shall be invested on unincumbered real estate. Suppose that the directors had made loans to a man in the state of New York upon incumbered real estate, would it lie in his mouth to say that that loan was void because there was a mortgage on the property prior to the mortgage of the company for the debt? The same section also provides that the real estate shall be at least double the value of the amount loaned. Now, the same rule that is invoked here on the part of the defense would entitle a man in the state of New York, who has borrowed this fund, to say that the security for the loan was void because the property was not of double the value; that the directors had exceeded their power, and the note or obligation was ultra vires. I therefore conclude that the defense of want of power to make this loan here, and consequent invalidity of the note, is not well taken.

The next objection is, that the company has been paid by the collections of commissions which ought to have gone to Cronkhite, and which should be applied in liquidation of this note. As I have already said, in stating the facts, Cronkhite, during the time he remained the company's agent, after the giving of this note, retained all the commissions in his hands, and the company received no commissions from him while he remained the company's agent. It may be a very important question whether Mr. Cronkhite is entitled to draw any commissions after his agency ceased.

On general principles, I would be inclined to hold that the insurance company would certainly have made a very improvident and unbusiness like contract to agree to pay an agent commissions on collections after he had ceased to be worthy of their confidence as an agent to make collections. But whether that is so or not, I am satisfied that this defense, if available at all, can only be made in a court of equity where an account can be stated, and it can be ascertained how much this company has collected that ought to be applied upon this claim.

I do not intend to commit myself by saying that the defense could be made applicable even in equity; but if at all available, it must be maintained in equity. I shall, therefore, find the issues in this case for the plaintiff, and assess the damages at the amount of the note.

[NOTE. The defendant, Sextus N. Wilcox, was also the surety on Cronkhite's bond to the company given, conditioned for the faithful performance of his duties as agent. For action on this bond, see Case No. 9,979.]