FARMERS' LOAN & TRUST CO. *v.* GREEN BAY & MINN. R. Co.

*(Circuit Court, E. D. Wisconsin.* July 7, 1882.)

NEGLIGENCE—DAMAGES FROM INJURY TO LANDS.

Corporations acquiring title to lands along the line of a railroad may recover damages for injuries to such lands arising from the negligence of the receiver of such road and his agents engaged in operating the line, notwithstanding they acquired such title for purposes foreign to the object of their creation. Such fact is no defence to an action for damages for injury to their lands.

*Cate, Prentiss & Noyes,* for petitioner.

*Larned & Larned,* for receiver of railroad.

HARLAN, Justice, *(orally.)* In this case, pending in the circuit court of the United States for the eastern district of Wisconsin, the Scranton Manufacturing & Boom Company and the Dexterville Manufacturing & Boom Company, corporations created under the general laws of Wisconsin, heretofore filed petitions in this cause, asserting claims against the receiver of the railroad company for damages done from time to time by fire to certain lands by them respectively owned.

The petitions, in substance, allege that the lands were, in part, covered with pine forests, suitable for saw logs, and other kinds of useful and valuable timber, and other portions thereof were what is commonly known as cranberry marshes and grass lands, and as such were valuable. The claims were rested upon the ground that the railroad which passed through the lands described was, upon the part of the receiver and the employes, so carelessly and negligently maintained that coals and sparks of fire escaped from passing locomotives, causing numerous fires on the track and right of way, upon which the receiver had carelessly and negligently allowed to be accumulated and remain, a large quantity of combustible and inflammable material, dangerous to the adjoining property of petitioners; also that these fires were negligently permitted to spread and extend from the line of the railroad to and upon the lands of petitioners. It was alleged, among other things, that the locomotives used by the receiver were not properly constructed and repaired, or provided with spark-arresters, and were so negligently operated as to cause the fires to which reference has been made.

By an order entered on the twenty-sixth of July, 1881, these claims were referred to a special master for examination and report thereon. Upon the claims of each company the master made a report, allowing some and disallowing others. He finds, among other things, that

the Scranton Manufacturing & Boom Company sustained damages
by reason of fires, through the destruction of cranberry vines growing
upon its lands, to the amount of $2,000; and that the Dexterville
Manufacturing & Boom Company sustained damages from the same
cause, and in like manner, to the amount of $1,500. In each case
his finding is that the fires were the result of negligence upon the part
of the receiver, his agents, and employes.

Upon exceptions to the master's reports his findings have hereto-
fore been approved by the district judge. The present hearing is
had before the circuit justice and the district judge, and counsel
have been permitted to reargue only certain questions of law, viz.:
(1) Whether these corporations are permitted by their charters to
acquire lands for the purpose of cultivating cranberry vines, and with
reference to their being so cultivated. (2) If not, can they be heard
to assert claims for damages done to such vines? Counsel for the
receiver maintains the negative of each of these propositions.

The learned counsel for the receiver insist with much confidence
that their position is sustained by a ruling heretofore made by me
in *Timothy* v. *Kelly*. Let us see what that case was. It appeared
that Kelly, Ketchum, and Hiles held the title to various tracts of
land, aggregating more than 400 acres, lying along and covering
a part of the line of the Green Bay & Minnesota Railroad Com-
pany. The object of that suit was to obtain a decree compelling
the defendants therein to surrender the title to those lands to the com-
pany or to its receiver. The ground upon which the receiver there
proceeded was that the several tracts were in fact donations by
the respective grantors to the railroad company, with a view as
well to aid in the construction of the road as for the purpose of
securing the location of depots, whereby the grantors expected to
derive profit; that the defendants, in view of their official relations
to the railroad at the time of the donations, as well as at the time
the deeds were executed, were forbidden by law from taking title to
themselves; that the taking of title to themselves, under the circum-
stances, was a fraud as well upon the company as upon the grantors,
and in violation of the intention of the grantors. I found that Kelly
and others had obtained title to the lands there in question under
the circumstances charged; that is, that their grantors intended to
make donations of the land to the company, and that there was no
purpose on their part, as Kelly and Ketchum well knew, to convey
the title to them, except as representatives of the company. The
difficulty I had in that case was as to the extent of the relief which

could be given to the railroad company. The company by its charter was made capable of acquiring for its legitimate use for railroad purposes a fee-simple in lands, tenements, or easements in the same, and of conveying any such estate or interest. It was authorized through its officers to enter upon land for the purpose of locating the route of its railroad, and, the route being located, to enter upon, take possession, occupy, and use any land along and including its line of road, not exceeding 100 feet in width and outside of its right of way; also, to take and occupy other lands which might be necessary for its use for the purpose of erecting depot buildings, stopping stages, station-houses, freight-houses, ware-houses, engine-houses, machine-shops, or for buildings or fixtures of any kind, or grounds about such buildings, houses, or fixtures, for the convenient operation of the business of the road. The company's charter further declared that all private property which it was authorized to take was deemed to be taken for public use. It was ruled in that case that the company needed and could use for railroad purposes only a very small part of the lands, the title to which Kelly and Ketchum had improperly taken to themselves; that it had no power to condemn land for any purpose except railroad purposes; and that it could not take the title to lands for merely speculative or farming purposes. It was consequently adjudged that the court would not lend its aid to the company to acquire title to land which it could not have condemned for railroad purposes, and the title to which the company could not consistently with its charter have acquired. The duty of the court to withhold its aid in that direction was regarded none the less imperative because the defendants had used their official relations with the company to acquire title in themselves. The court, however, recognized the company's right to relief as to such portion of each tract as was contiguous to its several depots and necessary for its use for legitimate railroad objects, including right of way and depot grounds. To that end and for that purpose the cause was sent to a special master to take proof and report. This statement of what was decided in the *Kelly* suit is, I think, quite sufficient to show the inapplicability of the ruling there made to the case in hand. Now the contention of counsel is that these manufacturing and boom companies could not lawfully acquire land for the purpose of maintaining and cultivating cranberry vines, and the court having ruled in the *Kelly* case that the law would not aid the corporation to *acquire* land, the title to which it could not lawfully take and hold, must now, to be consistent, rule that petitioning corporations having, as is claimed,

acquired title to land for purposes foreign to the object of their creation, cannot recover damages for injuries to such land arising from the negligence of the receiver and his agents engaged in the operation of the railroad. To this proposition the court is unable to give its assent. It cannot be sustained on principle or authority. *Nat. Bank* v. *Mathews,* 98 U. S. 621; *Nat. Bank* v. *Whitney,* 103 U. S. 99; *Smith* v. *Sheeley,* 12 Wall. 358; *Mutual Life Ins. Co.* v. *Wilcox,* 8 Biss. 203.

The cases cited by counsel do not justify the conclusion that a party causing by his negligence injury to land, the title to which is held by a corporation, may be relieved from responsibility for damages by showing that the corporation did not legally acquire title to the land, or that it is used for unauthorized purposes. The proposition now presented is substantially negatived by what was said in the *Kelly* case. It was there said: "Had the several grantors made conveyances directly to the company, its title, although it may have been acquired in violation of its charter, could not have been questioned collaterally or otherwise than by the state in some appropriate proceeding for that purpose. The difference between the supposed case and the one now before us shows the inapplicability of the rule announced in *National Bank* v. *Mathews,* and the authorities there cited."

So, here, if injury is done to real estate conveyed to and held by a corporation, the party by whose negligence such injury is caused cannot be heard to say, in a collateral proceeding, and by way of defence to a suit for damages, that the corporation was not permitted by its charter to acquire title to the property, or that it had acquired it for purposes unauthorized by law. In considering this question the court has not deemed it necessary to determine whether these manufacturing and boom corporations exceeded their authority in acquiring title to cranberry marsh lands valuable only or chiefly for the cultivation of cranberry vines.

It means only to decide that even if they exceeded their authority in the respects named, that fact constitutes no defence to the present claims for damages.

In what I have said the learned district judge concurs.