## Case No. 10,862.

### PAYSON v. HADDUCK et al.

[8 Biss. 293; [1] 11 Chi. Leg. News, 57.]

District Court, N. D. Illinois.    Oct., 1878.

ADMINISTRATION OF ESTATES—CONTINGENT CLAIMS NOT BARRED BY TWO YEARS' LIMITATION STATUTE — LIABILITY OF HEIR FOR ANCESTOR'S LIABILITIES—EQUITY JURISDICTION—CAPITAL STOCK ASSESSMENT.

1. A contingent claim which is not due, or which had not accrued prior to the close of the administration of an estate, is not barred by the Illinois statutory two years' limitation of time within which to exhibit claims against a decedent's estate.

2. The heir is liable to the extent both of the personal and the real estate received from his ancestor, for the contracts or liabilities of the ancestor, and where these claims have not accrued until after the administration of the estate is closed, suit may be brought and maintained against the heir, to the extent of the assets derived from the ancestor.

3. Where the ancestor holding capital stock in a corporation, subject to assessment, died, and subsequent to the close of administration of the estate, an assessment was made upon the stock: Held, that a suit in equity could be maintained against the heirs for such assessment to the extent of assets received from the ancestor.

[This was a bill in equity by Joseph R. Payson, assignee of the Republic Insurance Company, against Benjamin F. Hadduck, Jr., and others, to enforce the payment of cer-

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

tain assessments levied by the court in Case No. 11,704. Heard upon demurrer.]

Tenneys, Flower & Abercrombie, for complainant.

Mattocks & Mason, for defendants.

BLODGETT, District Judge. I will say to counsel that I have not had time—I have not been able to take such time as I could have wished, in following out the interesting questions that are raised in this case. I have only been able to give the case such cursory examination as has satisfied my own mind; and what I say in disposing of the case, I do not wish to have considered as an exhaustive discussion of the questions of law raised, and which have been so ably argued by counsel.

The facts which are set out in the bill, and admitted by the demurrer, are briefly these:

Prior to the great fire of October, 1871, in this city, there existed in this state a corporation known as the Republic Fire Insurance Company, created under the statutes of this state, and having its proper office and place of business in the city of Chicago. The stock of this company had been issued to the amount of $5,000,000, upon which 20 per cent. had been paid in, and the remaining 80 per cent. was subject to the call of the directors whenever there should be an impairment of the capital by losses. By the great fire in this city, the company became insolvent, and in the course of the year 1872—the date is not material for the purposes of this question—was declared bankrupt, and an assignee duly appointed. Benjamin F. Hadduck was a stockholder in the company to the amount of 500 shares of $100 each, making $50,000, upon which he had paid his first installment of 20 per cent., and was liable to an assessment for the remaining 80 per cent. under the terms of the charter and by-laws of the corporation. Mr. Hadduck died in December, 1871, and letters of administration were issued upon his estate in the Cook county court, during the early part of the year 1872. Shortly after the company was declared bankrupt, the assignee presented to this court an application for an assessment upon the stockholders of 60 per cent. upon their unpaid stock. This assessment was made by the court, and in due course of time so much of it was collected as was collectible. In October, 1876, the assignee represented to the court in a proper manner, by petition, that he had collected all of the 60 per cent. assessment which he was able to collect, and asked for a further assessment of 10 per cent. with which to liquidate the unpaid indebtedness of the corporation. This assessment was ordered to be made on the 18th of October, 1876.

The assessment of 60 per cent. which was made against all of the stockholders was paid by the administrator of Mr. Hadduck's estate in due course of administration, be-

tween the time when the assessment was made, and December, 1874; and in December, 1874, the administrator completed the administration, and the estate was declared closed, and the assets, which consisted of about $61,000 of personal property, moneys and credits, and something over that amount in real estate, were duly, by order of court, distributed to the heirs-at-law, who consisted of the widow and one son, Benjamin F. Hadduck, Jr.

It will be seen that the administration of the estate was closed after the 60 per cent. assessment was paid, and before the 10 per cent. assessment was made; and on the making of the 10 per cent. assessment, a call was made upon the administrator, widow and heir-at-law, for this 10 per cent., which they have refused to pay.

The assignee now brings this bill in equity to enforce the payment of this assessment against the widow and heir, and to that bill defendants demur, assigning two causes of demurrer:

First. That this action, and the claim, is barred by section 70 of chapter 3 of the Revised Statutes of Illinois, in reference to limiting claims against the estates of deceased persons to two years from the time the letters of administration are issued.

Section 70, which is invoked in this case, reads as follows:

"All demands against the estate of any testator or intestate shall be divided into classes, in manner following, to-wit:

"First. Funeral expenses.

"Second. The widow's award, if there is a widow; or children, if there are children, and no widow.

"Third. Expenses attending the last illness, not including physician's bill.

"Fourth. Debts due the common school or township fund.

"Fifth. All expenses of proving the will," etc.

"Sixth. Where the decedent has received money in trust for any purpose, his executor or administrator shall pay out of his estate the amount thus received and not accounted for.

"Seventh. All other debts and demands, of whatsoever kind, without regard to quality or dignity, which shall be exhibited to the court within two years from the granting of letters, as aforesaid; and all demands not exhibited within two years as aforesaid shall be forever barred, unless the creditors shall find other estate of the deceased, not inventoried or accounted for by the executor or administrator, in which case their claims shall be paid pro rata out of such subsequently discovered estate, saving however to femes covert, infants, persons of unsound mind, or imprisoned, or without the United States in the employ of the United States or of this state, the term of two years after their respective disabilities are removed, to exhibit their claims."

It is insisted on the part of the defendants in this suit, that the remedy of the assignee, as against them, is lost by the operation of this statute; that this claim should have been exhibited to the administrator of Mr. Hadduck before his discharge, and should have been proved and allowed by the county court, and that the failure so to exhibit it and have it allowed by the county court, during the progress of the administration of the estate, forms a complete bar to the claim.

The second point urged is that the form of action or proceeding to recover this assessment should have been by a suit at law, and not in equity.

The question which is presented by this demurrer raises the point as to whether a contingent claim which is not due, or cannot be said to have accrued during the term of the administration of the estate of a deceased person, is to be barred by the operation of this statute. There are a large number of claims which we can imagine may arise against the estates of deceased persons, which cannot be said to have accrued at the time the letters of administration are issued, or during the two years of the administration, such as actions of covenant for breaches of warranty made by the ancestor during his lifetime, and where the breach may not occur until long after the expiration of the limitation here provided for, and long after the settlement of the estate in the probate court; such, also, as liabilities in favor of sureties upon bonds where the liability of the surety is not fixed, perhaps, until long after the close of the estate in the probate court; and numerous cases of contingent liabilities may be imagined where the party could not present a claim to the probate court or exhibit it to the administrator during the two years of limitation which is here provided for; and the question is, does this statute of limitations run as against that class of claims?

I have come to the conclusion from examination of authorities that it cannot be said to run as against any contingent claim where the right of action has not accrued, and does not accrue, before the settlement of the estate is closed.

Without examining or reading the authorities at length upon the subject, I will call the attention of counsel to the case of Hall v. Martin, reported in 46 N. H. 337, which seems to me to more completely cover all the questions which are raised in this case than any other which I have been able to find. It will be sufficient for the purposes of this discussion that I read the syllabus of the case, as I think that fairly states the conclusion of the court:

"At common law the heir was liable on the covenants of his ancestor in which he was specially bound, just so far and no further, as he had assets by descent; and as real estate alone descended to him, his liability was limited to that.

"But where by our statute the personal estate is made to descend to him substantially in the same way, a correct application of the common law principle requires it to be treated as assets in his hands equally with the real estate; and it was therefore, held that such heir is liable on the covenants of his ancestors, which could not have been proved while the estate was in the course of administration, to the extent of the personal as well as the real estate which has so descended to him.

"Suits against an heir or devisee are not barred by the provisions of the Revised Statutes, limiting actions against executors or administrators of solvent estates, where no funds are retained for contingent claims by order of the judge of the probate court, to three years from the original grant of administration.

"But the limitation applies only to suits against the executor or administrator, and therefore the remedy against the heir or devisee upon claims which could not be proved during the three years because contingent, is not barred by these provisions, but remains as in the case of insolvent estates."

There are, of course, some provisions discussed in this opinion which are peculiar to the statute of New Hampshire in regard to the settlement of estates, such as those which apply to insolvent estates as distinguished from solvent estates, where, in cases of solvent estates, the administrator is required, or may be required, by order of the court to retain in his hands upon final settlement, or there may be retained in the hands of the court, a certain amount of funds to meet contingent liabilities which have not yet accrued; and so far as the discussion in this case applies to the particular provisions of the New Hampshire statute, of course they are not germain to the case in hand. But the general principle laid down is this: that the heir is liable to the extent both of the personal and the real estate received from his ancestor, for the contracts or liabilities of the ancestor, and that, where these claims have not accrued until after the administration of the estate is closed, suit may be brought and maintained against the heir to the extent of such assets which he derived from the ancestor. At common law the heir was not liable for the debts of the ancestor except upon covenants or bonds under seal, where the heir was specially named, and in those cases only to the extent of the real estate, because he only received real estate by descent. But this case breaks new ground, I think the court may say, and disregards the distinction upon principle between real and personal estate in the hands of the heir, because the law has made the heir the recipient of the personalty as well as realty from the ancestor—made him the heir to the personalty as well as to the realty, and the question of the bar of the statute—the bar of the New Hampshire statute being three-

years, instead of two as in our state—is discussed, and held not to apply to a case of this character; so that, without discussing the other cases, not perhaps analogous in all their facts or the findings of the court to this case, but tending in the same direction, which were cited on the part of counsel, I shall content myself with simply alluding to this case as in my mind furnishing a satisfactory basis for the conclusion at which I have arrived. See, also, Pendleton v. Phelps, 4 Day, 476; Neil v. Cunningham, 2 Port. (Ala.) 171; Jones v. Lightfoot, 10 Ala. 26; Burton's Adm'r v. Lockert's Ex'rs, 4 Eng. (Ark.) 412; Walker v. Byers, 14 Ark. 246; Miller v. Woodward, 8 Mo. 169; Finney v. State, 9 Mo. 227.

I come now to consider for a moment the form of remedy to the assignee in this case, whether it is by suit at law or in equity.

Story, Eq. Jur. at section 1216c, treating upon the jurisdiction of courts of equity, says: "It is upon the same ground, that, where there is a specialty debt, binding the heirs, and the debtor dies, whereby a lien attaches upon all the lands descended in the hands of his heirs, courts of equity will interfere in aid of the creditor, and, in proper cases, accelerate the payment of the debt. At law the creditor can only take out execution against the whole lands, and hold them, as he would under an elegit, until the debt is fully paid. But, in equity, the creditor will also be entitled to an account of the rents and profits received by the heir since the descent cast," etc.

The doctrine, then, of this authority, which is fully sustained by the citation to which the author refers, seems to be that a court of equity did take jurisdiction of this class of cases where it was attempted to enforce a specialty debt as against an heir to the extent of the assets received from his ancestors by descent. Inasmuch as the legislature of this state abolished by statute the distinction between a specialty and a simple debt, so far as the liability of the heir is concerned, of course the principle laid down here applies to the enforcement of a simple debt as well as a specialty debt or a covenant. By later legislation in England, an action at law may be maintained against the heir to the extent of the assets in hand, but we all very well know that courts of equity, where they originally took jurisdiction in many cases because of the inadequacy of the common law to afford an adequate relief, have retained jurisdiction, even after statutory provisions have removed the original cause for taking jurisdiction in equity, except in cases where there is a special provision clothing courts of law with the exclusive jurisdiction of the case. So that it seems from this authority that originally courts of equity were clothed with jurisdiction; and we find in two cases in our state, and in fact more, but two notably, bills of this character were filed and entertained by the supreme court of this state; although

there was no challenge of the jurisdiction upon the ground stated in this case.

The first is the case of Thomas v. Adams, reported in 30 Ill. at page 37, where there was an application made on the part of Thomas, trustee of the old State Bank, to collect the amount of several judgments recovered in favor of the bank, from the heirs of one Wynn, who was the judgment debtor, not upon the ground of a lien which had attached, but because of their liability under the law for their ancestor's debts.

The second is the case of Vanmeter v. Love, 33 Ill. 260. Those were both suits in equity, and the court seems to have treated that as the appropriate remedy.

In this particular case, waiving the general question as to whether there may or may not be in some cases an adequate remedy at law, it seems this is a peculiarly appropriate case for relief in a court of equity. This bill charges that there was a residuum of Mr. Hadduck's estate, after the payment of his debts, amounting to $61,000 in personal property, and over that amount in real estate, and that these were turned over by the administrator to the widow and heir. Now, under the statute of this state, the widow takes a certain share of the personalty. The personal property would seem, by all the analogies of the law of Illinois, to be the appropriate fund from which this personal liability should be paid; and it seems to me that the widow claiming under the statute in this state could be properly called upon to account for the portion of the personal property which she took under the statute, and the heir for his share. And running all through the cases, in fact, the way in which Mr. Justice Story groups this class of cases in his treatise upon the jurisdiction of courts of equity, shows that courts of equity took jurisdiction of these cases because there was an implied trust upon the part of the heir to the extent of the funds which he received from the ancestor. It was a trust fund to be followed by the creditors as against the heir or even the devisee, and, therefore, it seems to me that the court should take jurisdiction of it upon the general principle of taking jurisdiction of a case where persons have in their possession trust funds which a creditor is entitled to follow.

In the second place, if the personalty is not sufficient, then the realty would be the next fund to apply to, and in that, the widow only taking her dower, and being entitled only to that as her vested right, it might be necessary to inquire by an accounting as to the value of the estate subject to the widow's dower, or it might be necessary to set off the dower, because, of course, the dower cannot have been divested by a claim of this character any more than any other contract debt against a husband, and a widow might hold her share of the real estate, and the heir be compelled to account for only so much as he had, subject to the dower; so

that it seems to me there is in this case a peculiar fitness in holding that a court of equity has jurisdiction, because complete justice to all parties can only be done by a court of equity.

With these statements in brief, in regard to my views of the matter, I will overrule the demurrer.

[For actions brought by the assignee against other defendants, see Payson v. Dietz, Case No. 10,861; Payson v. Stoever, Id. 10,863; Payson v. Withers. Id. 10,864; Payson v. Coffin, Id. 10,858 and 10,859.]

PAYSON (LEITER v.). See Case No. 8,227.
PAYSON (MICHENER v.). See Case No. 9,524.

## Case No. 10,863.

### PAYSON v. STOEVER.

[2 Dill. 427;[1] 2 Ins. Law J. 733; 5 Chi. Leg. News, 477.]

Circuit Court, D. Minnesota. June Term, 1873.

BANKRUPT ACT — STOCKHOLDER'S LIABILITY — RIGHTS AND POWER OF ASSIGNEE — CONSTRUCTION OF CHARTER OF THE REPUBLIC INSURANCE COMPANY.

1. Under the bankrupt act [14 Stat. 517], the right to enforce the liability of stockholders with respect to their unpaid stock passes to the assignee; and this is the case with the Republic Insurance Company under its charter, whose assignee in bankruptcy may enforce such liability so far as necessary to pay losses and all other debts provable against the company.

2. The bankruptcy court has authority to make an assessment upon the stockholders, and its action in so doing cannot be collaterally assailed in suits to enforce the collection of the assessment.

3. By the charter of the Republic Insurance Company, its capital stock was fixed at $1,000,000, with authority to increase the same to $5,000,000 at the discretion of the stockholders: *Held*, that the charter contemplated that the increase of stock should be made by the stockholders, and that the directors had no authority under the original charter to make the increase.

4. No formal vote of the stockholders to increase the stock was necessary.

5. The requisite assent of the stockholders might be shown by their conduct and acquiescence, and in this case it was thus shown by the facts stated in the opinion of the court.

[Cited in Clarke v. Thomas, 34 Ohio St. 63. Cited in brief in Ward v. Farwell, 97 Ill. 597.]

6. The amended charter authorizing the directors to increase the capital stock—the stock never having been increased beyond the amount authorized in the original charter—did not have the effect to discharge a non-assenting stockholder from his liability upon his unpaid stock.

This action is brought by the plaintiff [Joseph R. Payson], the assignee in bankruptcy of the Republic Insurance Company of the state of Illinois, against J. C. Stoever, to enforce the collection of an assessment of sixty per centum upon the par value of

---

[1] [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]

ten shares of stock in said company, of which he is alleged to be the holder and owner. The company was adjudged a bankrupt on a creditor's petition by the district court of the United States for the Northern district of Illinois, November 14, 1872, and the plaintiff was duly appointed assignee in bankruptcy, and a conveyance was made December 18, 1872, to him by the register under the 14th section of the bankrupt act [14 Stat. 522]. The assignee filed in the bankruptcy court a petition for assessment upon the unpaid stock of the stockholders December 30, 1872, and, after due consideration of the same, the court, in February, 1873, ordered, adjudged, and decreed that an assessment be made upon the capital stock and stockholders of sixty per centum of the par value of said stock. [Case No. 11,704.] The company was chartered February 15, 1865, by the legislature of Illinois, with a capital stock of $1,000,000, with authority to increase the same to not exceeding $5,000,000 at the discretion of the stockholders. This charter was subsequently amended (March 25, 1869), providing, among other things, that "the board of directors shall have power to increase the capital stock of said company from time to time in their discretion." The board of directors, January 9, 1868, voted to increase the capital stock of the company, by resolution, to $5,000,000, but at no time during the existence of the company was that amount of stock issued. The defendant held a certificate for ten shares of stock, dated November 8, 1868, reciting the payment thereon of twenty per cent. It is admitted that the shares owned by him were not part of the $1,000,000 first issued, but were part of stock issued in excess of this amount. At an annual and regular meeting of stockholders, January 13, 1869, a report was submitted, showing that $3,746,000 of stock had been issued at that time, and at this meeting $3,116,000 of stock was voted for directors, of which stock so voting $804,600 was represented out of the first $1,000,000 issued. This meeting was the regular annual meeting of the stockholders provided for by the by-laws of the company, which by-laws were adopted January 8, 1868, by the directors, and not by the stockholders of the company. The defendant received two dividends on the 10th of February, 1870, of $10 each, upon the stock owned by him, but never had, as he testified, any knowledge that the capital stock of the company had been increased beyond the $1,000,000, or that the charter had been amended. On all the stock issued the company declared four five per cent. dividends, as follows: June 30, 1868; January 13, 1869; July, 1869, and January, 1870. The whole amount of stock issued by the company before its failure was $4,900,000. At the time of the amendment of the charter, in March, 1869, the company had then issued stock to the amount of $4,450,300. The bankruptcy of the company

was occasioned by the great Chicago fire in October, 1871, in which it had risks and sustained losses to the amount of nearly $3,000,-000.

The cause was tried to the court. The defendant's counsel rest the defence upon substantially three grounds: 1. That under the bankrupt act no right to enforce the liability of stockholders in respect to the unpaid stock passes to the assignee, but such liability must be enforced by creditors in their own names, or through a receiver appointed by a court of chancery. 2. The bankruptcy court has no authority to make an assessment, or call upon the stockholders, but if it has, the call in this case is made upon an erroneous basis, since it is made both with respect to liabilities and losses by fire, and with respect to matters for which, under the 6th section of the charter, the stockholders are not liable. 3. That the defendant's stock, for which payment is sought to be enforced, is wholly void, the same being stock which was issued in excess of the $1,000,000 by the directors, without the sanction of the stockholders, as required by the charter, and prior to the amended charter, to which amendment the defendant claims never to have assented.

[See Cases Nos. 11,704 and 11,705.]

Mr. Frost, of Miller, Frost & Lewis, and C. K. Davis, for assignee.

Mr. Gilman, Mr. Lamprey, Mr. Horn, Mr. Warner, and others, for defendant.

Before DILLON, Circuit Judge, and NELSON, District Judge.

DILLON, Circuit Judge. The questions arising in this cause have been presented by counsel with a degree of thoroughness, research, and logical force rarely witnessed, and as an early determination of the cause is desirable, the court proceeds to announce its conclusions without waiting to find time to elaborate at any considerable length the grounds upon which its judgment rests.

1. The plaintiff, as the assignee in bankruptcy of the Republic Insurance Company, represents as against its stockholders the rights both of the bankrupt company and its creditors. The company being in bankruptcy, all the claims of its creditors must be established in the bankruptcy court, and its assets collected and distributed under the superintendence of that court.

Whether under its charter the company, if it had not been thrown into bankruptcy, could collect from the stockholders the full amount of their unpaid stock, or could only collect so much as might be necessary to pay "losses" proper as distinguished from "liabilities," it is not necessary to determine, for clearly the unpaid stock is liable to creditors for all debts and legal liabilities, and the assignee represents the creditors as well as the company. However it might have been before, creditors cannot, since the supervention of bankruptcy, bring bills in equity or other actions in their own names directly against the stockholders to enforce their liability with respect to their unpaid stock.

The liability on the part of the stockholders is one which is imposed for the benefit of creditors, and creditors must now secure the benefit of it through the assignee. And in respect to the assignee and so far as may be necessary to pay the binding debts and legal liabilities of the company, the principles sanctioned by the supreme court of the United States in the case of Ogilvie v. Knox Insurance Co., 22 How. [63 U. S.] 380, 387, apply here. "Stockholders," says Mr. Justice Grier, in that case, "who have not paid in the whole amount of stock subscribed and owned by them, stand in the relation of debtors to the corporation for the several amounts due by each of them. * * * The stock subscribed and owned by the several stockholders or partners constitutes the capital or fund publicly pledged to all who deal with them."

[NOTE. For similar actions brought by the assignee against other delinquent stockholders, see Payson v. Dietz. Case No. 10,861; Payson v. Withers, Id. 10,864; Payson v. Coffin. Id. 10,858 and 10,859; Payson v. Hadduck, Id. 10,862.]

As to liability of stockholders, see Haskins v. Harding [Case No. 6,196]; Ashton v. Burbank [Id. 582].