### CHEWETT v. MORAN.

*(Circuit Court, E. D. Michigan. September 18, 1883.)*

1. **EQUITY—SUBJECTING REAL ESTATE IN HANDS OF HEIRS TO DEBTS OF ANCESTOR.**

    A bill in equity will lie to subject real estate in the hands of heirs to the payment of the debts of their ancestor.

2. **SAME—PROCEEDINGS IN PROBATE COURT—LACHES.**

    It is not an absolute bar to the maintenance of such bill in a federal court that the estate of the ancestor was administered in the probate court of the state; that commissioners were appointed to audit claims against the estate; that a time was limited within which all claims must be presented; and that

plaintiff did not appear before such commissioners or offer to make proof of her debt, notwithstanding a law of the state declared that all claims against such estate not so presented should be forever barred. *Held, further,* that the failure to present such claim was evidence of laches, and that the burden was upon the plaintiff to excuse the same.

3. SAME—DEBT SECURED BY MORTGAGE—PAYMENT OF INTEREST.

It appearing that the debt was secured by mortgage; that the interest upon such mortgage was regularly paid by the mortgagor during his life-time, and by his administrator after his death, until the estate was closed and turned over to the heirs; that the mortgage was thereupon foreclosed and the property sold, and that the claim was for a deficiency upon such sale,—it was *held* that the mortgagee was not bound to prove her claim before the commissioners, and that her delay was sufficiently excused.

In Equity. On demurrer to bill.

This was a bill in equity on behalf of complainant, and all other creditors who might come in and contribute to the expense of her suit, against the heirs of Peter Desnoyer, to charge his estate with the payment of a balance remaining due upon a mortgage after sale of the property. The bill set forth that Desnoyer and wife in 1875 mortgaged to complainant certain lands in Sandwich, in the province of Ontario, to secure the payment of $4,000. The mortgage contained a covenant that the mortgagor would pay the money thereby secured. Desnoyer and his wife died in 1880, and William B. Moran was appointed administrator. After payment by the administrator of two installments of interest, default was made, the mortgage was foreclosed, and the property sold for $2,100, leaving a balance due of $1,550. The bill further alleged that Desnoyer left real estate to the value of $58,000, now in the hands of the defendants, upon which complainant claimed an equitable lien.

*A. H. Fleming* and *S. M. Cutcheon,* for complainant.

*Isaac Marston,* for defendants.

BROWN, J. This is in substance a bill to charge certain real estate in the hands of heirs with the mortgage debt of their ancestor. While it would seem that an action at common law will lie against an heir for breach of an express covenant of the ancestor, contained in a sealed instrument, provided the ancestor expressly bound himself "and his heirs" by the obligation, and provided the heir has legal assets by descent from the obligor, there can be no doubt of the jurisdiction of a court of chancery to entertain a bill on behalf of a creditor and all others who may choose to make themselves parties, to charge the real estate in the hands of the heirs with payment of the ancestor's debts. Story, Eq. Pl. 99–102; Adams, Eq. 257; *Skey* v. *Bennett,* 2 Younge & C. 405; *Stratford* v. *Ritson,* 10 Beav. 25; *Ponsford* v. *Hartley,* 2 Johns. & H. 736; *Riddle* v. *Mandeville,* 5 Cranch, 322; *Payson* v. *Hadduck,* 8 Biss. 293.

The chief difficulty in this case arises from the fact that proceedings to settle the estate in the probate court were taken, commissioners to receive proof of claims appointed, a time limited within which creditors should present their claims, the estate closed, and the administrator discharged before the filing of this bill. Complainant did

not offer to prove her claim before the commissioners, and allowed the time limited by law for the proof of claims to expire before any proceedings whatever were taken.

It is conceded that, under the federal authorities, complainant was not bound to appear before the probate court, but was at liberty to take the proper proceedings for the collection of her debt here. The jurisdiction of the federal court cannot be ousted or impaired by any provision of a state law requiring creditors to appear before a state court and present their claims. *Suydam* v. *Broadnax*, 14 Pet. 67; *Hyde* v. *Stone*, 20 How. 170; *Union Bank of Tennessee* v. *Jolly's Adm'rs*, 18 How. 503; *Payne* v. *Hook*, 7 Wall. 429.

It is claimed, however, that complainant has been guilty of laches in not proving her claim before the probate court, or at least in not instituting proceedings here within the time limited by statute, and before the estate was settled and the administrator discharged. We are referred to the case of *Board of Public Works* v. *Columbia College*, 17 Wall. 521, in support of the proposition that a court of equity will not exercise its jurisdiction to reach the property of a debtor applicable to the payment of his debts, unless the debt be clear and undisputed, and there exist some special circumstances requiring the interposition of the court to obtain possession of and apply the property. In this case, the debtor had died in 1861, leaving a will which was insufficient to pass real property, but sufficient to pass personal estate. His estate was administered in the orphans' court, but complainant's demand was never presented to it for allowance. In 1867 its bill was filed against the executor, heirs at law, and legatees, to reach the real property of the deceased which did not pass under the will, but which vested in his heirs. The object of the bill was to charge the executor for the assets which came into his hands, which he had distributed to the legatees under a decree of the supreme court of the district, on the ground that he was informed of the debt of the complainant, and failed to bring it to the notice of the court, directing a distribution, and to compel the legatees to refund the amounts received by them. In their answer defendants claimed that the distribution under the decree of the court afforded a complete protection to the executor and legatees. Upon the argument, the only question really controverted was the liability of the legatees to refund the amounts received by them to be applied on the demand of the complainant. The court held that to sustain a bill of this description the debt should be clear and undisputed, and that some satisfactory excuse should be given for the failure of the creditor to present his claim in the mode prescribed by law to the representatives of the estate before distribution. I think this case disposes of defendant's claim that this court has no *jurisdiction* to entertain a bill by reason of a failure of complainant to present her claim to the commissioners for allowance, or to prosecute this suit before the time allowed by law for the presentation of such claims had expired.

By Comp. Laws, § 4424, the probate court must allow from 6 to 18 months for the proof of claims against the estates of deceased persons, which time, by section 4425, may be extended to two years, but no longer; and by section 4433 it is provided that creditors who shall not exhibit their claims within the time allowed by the court for that purpose shall be forever barred from recovering them in any action whatever. It does not appear from the report of the above case whether a similar practice obtained in the orphan's court in the District of Columbia; but it does appear that auditors were appointed, who advertised for persons having claims against the estate to present them, and that the complainant did not in any way appear, or make its claim before such auditor. Decree was then entered, directing a distribution among the legatees. From the fact that the failure of complainant to present its claim before the auditors was not treated by the supreme court as an absolute bar to its bill, but only as evidence of laches, requiring explanation and excuse, we are led to infer that the limitation contained in these acts was not considered applicable to non-resident creditors, or pleadable as an ordinary statute of limitations in the federal courts. This inference is strengthened by a reference to the earlier cases of *Suydam* v. *Broadnax*, 14 Pet. 67, and *Union Bank of Tennessee* v. *Jolly's Adm'rs*, 18 How. 503, although the question was not squarely presented in either case. The whole tenor of these decisions is inconsistent with the idea that foreign creditors are limited in their choice of a forum, or subject to other limitations of the act. We think the whole enactment should be read together, and that if a non-resident creditor is not bound to prove his claim before the probate court, he is not restricted by the other provisions of the act requiring all claims to be proved within a limited time. In other words, the limitation is applicable only to such claims as are required to be proven in the manner pointed out by the act.

We think, too, that this ruling may be justified upon the broader ground that courts of equity are bound by statutes of limitation in general only by analogy, and may relieve against them in cases of manifest injustice. Thus, in Story, Eq. Jur. § 1521, it is said:

" Courts of equity not only act in obedience and analogy to the statutes of limitation in proper cases, but they also interfere in many cases to prevent the bar of the statutes, where it would be inequitable or unjust. Thus, for example, if a party has perpetrated a fraud, which has not been discovered until the statutable bar may apply to it by law, courts of equity will interpose, and remove the bar out of the way of the other injured party. *A fortiori*, they will not allow such a bar to prevail by mere analogy, to suits in equity, where it would be in furtherance of a manifest injustice."

Instances of the application of this doctrine are not unknown even in this state. Thus, in *Michigan Ins. Co.* v. *Brown*, 11 Mich. 265, it was held that a remedy by foreclosure of a mortgage in equity was not lost by an action at law upon the debt becoming barred by

the statute of limitations.· In delivering the opinion Mr. Justice CAMPBELL said:

"The statute of limitations is confined to actions or suits to enforce payment of the contract as a personal demand. Equity follows the analogies of the law in all cases where an analogous relief is sought upon a similar claim. But where the relief sought is in its nature one of equitable and not of legal cognizance, and the remedy is of a purely equitable nature, equity follows its own rules. * * * In regard to mortgages, equity, although raising presumptions from lapse of time, has not made these presumptions conclusive. * * * The rule fixing such presumptions at twenty years was adopted, undoubtedly, in accordance with the limitations of real actions in the common-law courts, but it differs from that in not being an absolute bar to the remedy." See, also, *Powell* v. *Smith*, 30 Mich. 451.

The case of *Johnston* v. *Roe*, 1 McCrary, 162, [S. C. 1 FED. REP. 692,] presents features very similar to those of' the case under consideration. This was a bill to subject certain property in the hands of the heirs of a debtor to the payment of the plaintiff's demand. It was contended by the defense that the statute of Missouri, concerning the administration of estates of deceased persons, required the presentation of all claims against the estate within two years from the time of the publication of a notice of the administration to creditors, and declared that all demands not thus exhibited should be forever barred. It was held that the federal court, sitting in equity, was not bound by this statute, inasmuch as the court, in the exercise of the chancery jurisdiction conferred by the constitution and laws of the United States, was not governed by the state practice. It was averred in the bill that certain entries, showing the payment of the notes in suit had been fraudulently made, and that in fact the notes had been paid. The court held that the statute in question was no bar to the prosecution of the demand. So, in the recent case of *Tice* v. *School-dist. No. 18*, 16 Chi. Leg. News, 1, [S. C. 14 FED. REP. 886,] it was held that the federal court, sitting in Nebraska as a court of equity, was not bound by a state law requiring all petitions for new trials to be filed in one year from the date of the judgment.

As no question is made regarding the validity of complainant's debt in this case, it only remains to consider whether she has been guilty of laches in not filing this bill before the estate was settled. It appears from the bill that the mortgagor, Desnoyei, died in March, 1880; that in June of the same year an administrator was appointed and commissioners designated to receive proof of debts, six months only being allowed to creditors within which to present their claims for examination and allowance. The commissioners reported prematurely in October, 1880, and in April, 1881, the probate court allowed the final account of the administrator, discharged him, and closed the estate. In August, 1880, and January, 1881, the administrator paid two installments of interest upon the mortgage, and the mortgagee was thereby led to believe that the mortgage would be assumed by

the administrator and heirs of the estate. On demand being made for a further installment in June, 1881, the administrator wrote the mortgagee that the heirs were in possession of their interests. In March, 1882, after due notice, and in accordance with the statutes of Canada, the mortgagee caused the property to be sold under a power of sale contained in the mortgage. Upon such sale the property realized but $2,100. This bill was filed in July, 1883. As the mortgage contained a personal covenant of the mortgagor to pay, the debt might undoubtedly have been proven against his estate. Yet the custom is to look to the land as the primary fund, and to resort to the personal responsibility of the mortgagor only in case of a deficiency after a sale of the premises. Indeed, under our statute, it is by no means certain that if the mortgagee had sought to prove her debt, the court would not have required her to exhaust her remedy against the land. *Clark* v. *Davis*, 32 Mich. 154, 159. But whether the common-law rule, which treats the personal estate as the primary fund for the satisfaction of debts. be changed by statute or not, it seems to me that complainant is not chargeable with laches in delaying this suit until a sale was had and the amount of the deficiency was ascertained.

The demurrer must be overruled.