RANKIN v. CITY OF BIG RAPIDS et al.

(Circuit Court of Appeals, Sixth Circuit. December 20, 1904.)

No. 1,318.

1. JUDGMENTS—ESTOPPEL—PRIVITY.

Where it had been previously determined in a probate proceeding by the receiver of an insolvent national bank to establish a claim for an assessment levied on stock against decedent's estate that she was the owner of the stock, the parties to a subsequent action against decedent's distributees by the receiver's successor to recover a subsequent assessment being in privity, defendants were estopped to relitigate the question of decedent's ownership, though the cause of action in the two proceedings was not the same.

2. SAME—STIPULATIONS—CONSTRUCTION.

Where a stipulation of facts recited that decedent's executor contested the claim of a former receiver of an insolvent national bank for a stock assessment filed against the estate on the ground that the stock stood in the name of decedent's deceased husband, and had never been transferred to deceased, and therefore belonged to his estate, such stipulation should be construed to admit that the defense made was on the ground that deceased never became the owner of the stock, and not that the only question litigated was whether the stock stood in the name of the deceased husband on the books of the bank.

3. ADMINISTRATORS—PROBATE PROCEEDINGS—CONTINGENT CLAIMS—FAILURE TO FILE.

Comp. Laws Mich. §§ 9411–9416, provide for the allowance and payment of claims against a decedent's estate and for the settlement of con-

tingent claims which may become absolute within two years from the time limited for other creditors to present their claims for allowance, and section 9380 declares that claims not presented within the time limited shall be barred. *Held*, that where a contingent claim against a decedent's estate did not become absolute until long after the two-year period had expired and until more than a year after the estate had been finally closed, it was not barred by such sections, though not filed in the probate proceedings.

4. SAME—LIABILITY OF DISTRIBUTEES.

Where a contingent claim against a decedent's estate did not become absolute until after the assets had been distributed and the time for proving the same in the probate proceedings had expired, the creditor, though never having filed the claim in the probate proceedings, was entitled to recover thereon in equity from the distributees to the extent of assets distributed to them.

Appeal from the Circuit Court of the United States for the Western District of Michigan.

This is a bill filed by the receiver of an insolvent national bank to collect an assessment levied by the Comptroller of the Currency upon a stockholder of the bank by reason of the extraordinary liability imposed by law, and the collection is sought to be made from a legatee who has received assets from the stockholder sufficient to satisfy the assessment. The circumstances out of which the controversy arose are these: Fitch Phelps was a holder of 11⅓ shares of the stock of the National Bank of Big Rapids, Mich., and by his will he devised and bequeathed to his wife, Harriet C. Phelps, all his property, real and personal, and made her the executrix of his will. He died January 22, 1890. His will was probated, and Mrs. Phelps accepted the appointment and qualified as executrix. She gave a bond, which recited that she was residuary legatee, but contained no obligation to pay the debts and satisfy the charges upon the estate, such as is required by the laws of Michigan as a condition to the turning over of the assets to her as legatee. She became possessed of the certificates of stock above mentioned, and received dividends thereon, but whether as executrix or legatee is a question in dispute. She died September 12, 1893, without having closed the administration of the estate of her husband. By her will she devised and bequeathed some of her property to John C. Fitzgerald, one of the defendants and appellees, in trust for the city of Big Rapids, the other defendant and appellee, wherewith to found and establish a public library in said city; and she also appointed Mr. Fitzgerald executor of her will. The will was proven in the probate court, and Fitzgerald qualified as executor. On November 7, 1893, commissioners were appointed to hear and determine claims against the estate of Mrs. Phelps, and six months were allowed them for that purpose. On May 7, 1894, they filed their report of the allowance of claims. Mr. Fitzgerald, on July 14, 1900, filed his final account as executor of the estate of Mrs. Phelps, and on August 10, 1900, the account was allowed, the executor discharged, and the estate closed. The shares of stock above mentioned, having proved worthless, were never disposed of, either by the executrix of Fitch Phelps or by the executor of Harriet C. Phelps. While the estate of Harriet C. Phelps was open, and on September 9, 1895, the bank having some time before that time become insolvent, and passed into the hands of a receiver, the Comptroller of the Currency levied an assessment of 60 per cent. on its stock. On January 25, 1896, the former receiver filed in the probate court his petition for the allowance against the estate of Harriet C. Phelps of a claim for the assessment of the 60 per cent. just mentioned. This claim was resisted by the executor of Mrs. Phelps upon the ground that she had never become the owner of the stock, which, as it was claimed, had all the while remained part of the estate of her husband, Fitch Phelps. This contention, however, was overruled by the probate court, and on June 15, 1896, the claim was allowed against the estate of Mrs. Phelps. This claim was paid by her executor. On December 16, 1901, the comptroller levied another assessment of 40 per cent. on the stock of the

bank, payable on or before January 20, 1902. The bill alleges that the receiver made demand upon the defendants for the payment of this assessment upon the stock above mentioned, which was refused. This claim was never proven in the probate court, nor did that court ever make any order relating thereto. There is in the hands of the trustee more than sufficient of the fund received under the bequest of Mrs. Phelps to satisfy the claim of the receiver, and there is also in the hands of the legatee more than enough for that purpose.

This bill was filed December 1, 1902. The only matter of fact in dispute in the lower court or here has been with regard to the alleged ownership of the stock by Mrs. Phelps or her estate. At the hearing in the Circuit Court it was held that the stock had belonged to the estate of Mrs. Phelps, but that the remedy had been extinguished by operation of the probate laws of Michigan as construed by the Supreme Court of the state. The court below held that the legatee was estopped by the decree of the probate court upon the claim founded upon the former assessment to deny that Mrs. Phelps had become the owner of the stock in question so as to charge her estate with the liability resting thereon, but that the remedy sought to be established by this bill was cut off by the operation of the probate laws of Michigan regulating the settlement of estates of deceased persons, and upon this ground dismissed the bill.

Taggart, Denison & Wilson (William Alden Smith, of counsel), for appellant.

Joseph Barton and Walter Drew, for appellees.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

SEVERENS, Circuit Judge, having made the preceding statement of the case, delivered the opinion of the court.

The question which we shall first consider is whether the defendants and appellees are concluded by the decree of the probate court upon the claim for the former assessment in respect to the ownership of the shares of stock by Mrs. Phelps, and, in consequence, by the executor of her estate; for, if they are, it precludes all inquiry into the facts bearing upon that question. And we think they are so precluded. The present receiver is the successor in place of the receiver who was the complainant in the former proceeding, and is in privity with him. McNulta v. Lochridge, 141 U. S. 327, 12 Sup. Ct. 11, 35 L. Ed. 796. And the legatee and its trustee are in privity with the executor who contested the claim for the first assessment. The legacy was of personalty arising from the conversion of her property by the executor. Freeman on Judgments, § 163; First Baptist Church v. Syms, 51 N. J. Eq. 363, 28 Atl. 461; Dandridge v. Washington, 2 Pet. 370, 377, 7 L. Ed. 454.

It is true, as contended by the appellees, the cause of action is not the same as was the subject of the former proceeding, and therefore the appellees are not estopped from contesting it. But in doing so they are precluded from again litigating any question material to the controversy which was raised and decided in the former suit. And it is evident that the question of the ownership of this stock by Mrs. Phelps then raised was precisely the same as that now raised by the defense that she was not such owner, and that, therefore,. her estate now in the hands of her legatee is not chargeable on account thereof. The principles of the doctrine

of estoppels as applied, on the one hand, to the cause of action, and on the other to incidental questions arising upon the trial and material to the controversy, are so fully stated in the case of Cromwell v. County of Sac, 94 U. S. 351, 24 L. Ed. 195, that we need do no more than to refer to that case for authority. In the statement of the facts agreed upon in the Circuit Court it is stipulated as follows:

"John C. Fitzgerald, executor of the will of Harriet C. Phelps, deceased, contested the claim of John S. Lawrence, receiver of the Northern National Bank of Big Rapids, filed against said estate, which is mentioned in the seventh paragraph of the bill of complaint in this cause. The said Fitzgerald contested said claim on the sole ground that the stock in said bank upon which was made the assessment to collect which said claim was filed still stood in the name of Fitch Phelps on the books of said bank, and had never been transferred to Harriet C. Phelps, and for that reason that Harriet C. Phelps was not the owner of said stock at the time said bank suspended payment, but that said stock at that time was owned by the estate of Fitch Phelps, deceased."

The appellees propose to construe this stipulation as extending only to a contention as to whether the stock stood in the name of Fitch Phelps on the books of the bank. But we think the reasonable and fair construction of it is that the defense made was upon the ground that Mrs. Phelps never became the owner of the stock, and that the fact that the stock stood in the name of Fitch Phelps was relied upon as evidence that it continued to belong to his estate.

We are therefore confronted with the important question in the case whether the remedy which the receiver seeks is barred by the probate laws of Michigan. In chapter 252 of the Compiled Laws of Michigan of 1897 provision is first made for the appointment by the probate court of commissioners to hear and determine claims which have accrued (or may accrue before the commissioners make their report) and are presented for allowance against the estate. The order for their appointment must prescribe the time within which such claims must be presented, at the end of which the commissioners must make their report. The limit of the time which may be allowed for that purpose is two years, but the judge may revive the commission for three months upon the application of a creditor before the estate is closed. At the time of granting letters testamentary or of administration the probate court is required to fix a time within which the assets are to be reduced and the debts and legacies paid, which, in the first instance cannot exceed eighteen months, but which may in certain conditions on the application of the executor or administrator be extended to four years. And in regard to the presentation of claims and the consequence of failure to present them it is provided by section 9380 as follows:

"Every person having a claim against a deceased person, proper to be allowed by the commissioners, who shall not, after the publication of notice, as required in the second section of this chapter, exhibit his claim to the commissioners, within the time limited by the court for that purpose, shall be forever barred from recovering such demand or from setting off the same in any action whatever."

133 F.—43

From the reading of this section it is manifest that the claims thereby barred are such as are "proper to be allowed by the commissioners." Such claims were those only which were absolutely payable, and which the executor or administrator would be bound to pay to the extent of the assets.

Following all these provisions, and other details which it is not important here to notice, are provisions relating to claims which the commissioners were not authorized to allow, and classed as "contingent claims," as follows:

"(9411) [As it stood at the time when the commissioners in this matter held their appointment.] If any person shall be liable as security for the deceased, or have any other contingent claim against his estate, which can not be proved as a debt before the commissioners, or allowed by them, the same may be presented, with the proper proof, to the probate court, or to the commissioners, who shall state the same in their report, if such claim was presented to them. [The remainder of the section is unimportant here.]"

"(9412) Sec. 46. If the court shall be satisfied from the report of the commissioners, or by the proof exhibited, said court may order the executor or administrator to retain in his hands sufficient estate to pay such contingent claim when the same shall become absolute, or, if the estate shall be insolvent, sufficient to pay a proportion equal to the dividends of the other creditors.

"(9413) Sec. 47. If such contingent claim shall become absolute, and shall be presented to the probate court, or to the executor or administrator, at any time within two years from the time limited for other creditors to present their claims to the commissioners, it may be allowed by the probate court upon due proof, or it may be proved before the commissioners already appointed, or before others to be appointed for that purpose, in the same manner as if presented for allowance before the commissioners had made their report, and the persons interested shall have the same right of appeal as in other cases.

"(9414) Sec. 48. If such contingent claim shall be allowed, as mentioned in the preceding section, or established on appeal, the creditor shall be entitled to receive payment to the same extent as other creditors, if the estate retained by the executor or administrator shall be sufficient for that purpose; but if the claim shall not be finally established as provided in the preceding section, or if the assets retained in the hands of the executor or administrator shall not be wholly exhausted in the payment of such claims, such assets, or the residue of them, shall be disposed of by order of the probate court, to the persons entitled to the same, according to law."

From these sections it is seen that any person having a contingent claim, such as this is, might present it, with proof, to the commissioners at the time of making their report of their own determinations. They do not act upon it. They have no power to do so. Buchoz v. Pray, 36 Mich. 429; Campau v. Miller, 48 Mich. 148, 11 N. W. 845. The judge, if satisfied by the proof, is to order the executor to retain sufficient funds to pay it, or its proper proportion, when it becomes absolute. The rest of the estate is distributed. Then, if within two years the contingent claim becomes absolute, the claimant may present it for final allowance, and it is paid out of the funds which have been retained, and the surplus of such funds is distributed. If the claim has not become absolute within the two years it cannot be thus established, and, if it is not, the assets which have been retained to meet it are distributed to those entitled by law. It is suggested by counsel for the appellees that the words in section 9412, "to retain in his hands sufficient estate to pay such contingent claims when the same shall be-

come absolute," have no limitation as to the time during which the funds are to be retained. But we see no force in this suggestion, for by section 9414 the funds are to be distributed at the end of the two years if the claim has not been established. Moreover, after the estate was closed and the executor discharged, the probate court, as well as the executor, lost all control of the assets as completely as if they had never been in their hands. It is evident, therefore, that this claim could never have been collected under the provisions of the statute thus far recited; for this claim became absolute long after the lapse of the two years from the filing of the commissioners' report, and more than one year after the estate had been closed. It is evident that the purpose of these provisions was to hold the estate open for a limited time to enable a creditor having a contingent claim which might become absolute within that period to come in and share with other creditors before the administration should be closed; and, if it did not become absolute, the estate should be closed without further regard to such claim.

Another provision follows those last recited, as follows:

"(9415) Sec. 49. If the claim of any person shall accrue or become absolute, at any time after the time limited for creditors to present their claims, the person having such claim may present it to the probate court, and prove the same at any time within one year after it shall accrue or become absolute, and if established in the manner provided in this chapter, the executor or administrator shall be required to pay it, if he shall have sufficient assets for that purpose, and shall be required to pay such part as he shall have assets to pay; and if real or personal estate shall afterwards come to his possession, he shall be required to pay such claim, or such part as he may have assets sufficient to pay, not exceeding the proportion of the other creditors, in such time as the probate court may prescribe.

"(9416) Sec. 50. When a claim shall be presented within one year from the time when it shall accrue, and be established, as mentioned in the preceding section, and the executor or administrator shall not have sufficient to pay the whole of such claim, the creditor shall have a right to recover such part of his claim as the executor or administrator has not assets to pay, against the heirs, devisees or legatees who shall have received sufficient real and personal property from the estate."

It is a condition required by these sections that the estate shall not have been closed, for the claim must be presented while the probate court still has jurisdiction, and there must be an executor or administrator in office. As already pointed out, these conditions did not here exist, and the claim could not have been established while the estate remained open. There is no other prescribed method than those already exhibited for satisfying such claims. From all this it is manifest that no provision is made which would comprehend a claim which, like this, should not become absolute until after the jurisdiction of the probate court over the estate had ceased, and the question comes to this: Did the Legislature intend by this scheme for settling estates of deceased persons to cut off and leave unsatisfied all claims which were founded on the obligations of the deceased, but which should not become absolute during the administration by the probate court? As has been shown, claims which are absolute, and so capable of being established, are barred, if not presented, by express declaration. But there is no such declaration in regard to claims of the character we are considering. It is urged, however, that by the probate scheme to which

reference has been made all other recourse to the assets of the estate is, by implication, denied, and that this is the effect which the Supreme Court of the state attributes to these statutory enactments. It is not to be denied that, if this is so, the federal courts should administer the statute law of the state as thus construed. Security Trust Co. v. Black River National Bank, 187 U. S. 211, 23 Sup. Ct. 52, 47 L. Ed. 147.

It is claimed by the receiver, in effect, that the statutory enactments referred to were intended to reach no further than they go, and this extends only to the limit possible in the scheme devised, which, as all agree, was intended to effect a speedy liquidation and settlement of estates; that this legislation went as far as it could consistently with this purpose, and did not pretend to make regulation for cases which are not comprehended or provided for, and did not deny such proper remedies as might be due to cases not comprehended by the statute. And especially is it insisted that the long established principle of equity that the assets of a deceased person, which have come into the hands of heirs, devisees, distributees, or legatees by inheritance or gift, and not by purchase, should be appropriated to the satisfaction of his debts and obligations, was not intended to be displaced. It is therefore necessary to ascertain what interpretation the Supreme Court of the state has put upon these statutes which is relevant to the case in hand. In doing this we should distinguish between those cases where the claim was one which might have been, but was not, presented to and allowed by the probate court, and such as could not possibly have been allowed or satisfied by any proceeding in that court. In Clark v. Davis, 32 Mich. 154, the controversy arose over the distribution of an estate, and the case was heard on appeal from the order of the probate court denying an application of the heir to have the assets applied in payment of a mortgage securing notes given by the deceased upon lands which had come to the heir. The mortgagee had not proven the notes against the estate. It was held by the court that the heir should have proven his claim as a contingent one. Judge Cooley said, "The statute knows but two classes of claims—those which are absolute, and those which are contingent—and each at the proper time must be proved in a proper proceeding instituted for the purpose, and with the right of appeal, or it is barred." That was a proceeding in the probate court, and what was said had reference to such a proceeding. The estate was not yet closed. The claim might become absolute before that court should lose its jurisdiction. If it should not, the claim was beyond the power conferred by the statute. It was fitting to say that "the statute knows but two classes of claims—those which are absolute and those which are contingent." But that is not an affirmation that a claim which is not provided for by statute cannot, in any circumstance, be established in any other way. There is no indication that such a question was in the mind of the court. Brown v. Forsche, 43 Mich. 492, 5 N. W. 1011, was also on appeal from an order of the probate court, and the question was whether an administrator, who had paid all the debts allowed by the commissioners, and distributed the surplus according to law, should be compelled to pay a claim which had been subsequently allowed by the court. It was held that

he should not, and that a creditor coming in at that late date must take the estate as he finds it. The claim was an absolute one, and nothing which was said has any relevancy to the question before us. The next case cited in the order of dates is Showers v. Robinson, 43 Mich. 502, 5 N. W. 988. This was an action of ejectment to recover land which had been the homestead of the plaintiff, who was a widow, but which had been sold under license of the probate court to pay debts of her deceased husband. It was held that the homestead right did not pass by the sale. Judge Cooley, in discussing the question whether it was in contemplation of the statute that the land should be sold subject to the homestead, or that the whole estate in it should be sold and the homestead right protected in dealing with the proceeds, in stating the argument for the first conclusion and referring to the probate laws, said:

"Those provisions require estates to be closed and the personal representatives to be discharged in a very short period; allowing only eighteen months at first (Comp. Laws, § 4450), and permitting extensions to four years only in all (Comp. Laws, § 4451). All claims against the estate are barred which are not presented and proved before the administrator is discharged (Brown v. Forsche, 43 Mich. 492, 5 N. W. 1011, just decided); and we have no statute and no precedents for afterwards pursuing the estate in the hands of distributees or others who have succeeded to it."

The appellees lay much stress upon the latter part of this quotation. It is possible that the learned judge, in saying that there were no precedents for pursuing the estate in the hands of those succeeding to it, meant that the law of Michigan did not sanction it. But we do not think that was his meaning, but, rather, that there had been no decisions in Michigan to the effect stated, which was quite correct at that time, although, as we shall presently see, it could not be said now. It would seem that the language of the judge was guarded. That there were no statutes authorizing it is positively stated, and has at no time been doubted. The case of Shannon v. Shannon, 48 Mich. 182, 12 N. W. 42, was that of a bill "to enforce payment from an estate under a contract with decedent," as the reporter states. The defendants were the widow and heirs of a deceased brother of the complainant to recover upon an agreement between the brothers for the joint support of their mother. An allowance had been made by the commissioners for the support of the mother up to the date of the allowance, and this suit was for the purpose of relief touching what had accrued since and might thereafter accrue. The bill was dismissed on demurrer, and the decree was affirmed upon an opinion by Judge Campbell, who said:

"The case is not one for specific performance, and there is no authority to decree payment from distributees by a creditor at large. Debts which are not secured on property must be enforced under the probate laws. We need not consider what remedy may exist in that forum in the present condition of affairs. It is very certain that the present suit is anomalous, and not maintainable."

The opinion is short, and the case is rather scantily reported. We infer that the estate had not yet been discharged from the probate court, for, although Judge Campbell says that the "estate has been closed by distribution," we must suppose that he refers to that stage of the matter when the debts have been paid and the remaining assets have

been distributed, which precedes the time when the administrator files his final report and is discharged, as was the case in Brown v. Forsche, supra; otherwise there could have been no use in the suggestion of a possible remedy in the probate-court. Besides, it is hardly credible that, if the bill were filed after the probate court had lost jurisdiction to obtain satisfaction of a claim which had since become absolute, that learned judge would have characterized the suit as "anomalous," for the ancient doctrine of equity had been recognized in many state decisions as well as by the federal courts as supplementing the local probate systems. In Aldrich v. Annin, 54 Mich. 230, 19 N. W. 964, there had been no administration, and a creditor filed a bill against the widow to collect a debt out of assets of the deceased in her hands. Judge Cooley, delivering the opinion of the court, said:

"Creditors of a deceased person are to enforce their claims against his estate through proceedings in the probate court, and the statute makes ample provision for the purpose. If other parties interested fail to take out letters of administration, the creditor himself must do so, and such proceedings will then be taken as will adjust all equities on the principle of relative equality. If the creditors might severally go into equity for the enforcement of their demands, the purpose of the statute of distribution would be defeated, and estates might be eaten up in litigation. It may be that in this case complainant is the only creditor, and the allowance which it is sought to reach the only asset; but the way to ascertain who are interested, and what the assets are, is to take the statutory proceedings." 54 Mich. 231, 19 N. W. 965.

We are unable to perceive any relevancy in that case or the language of the court to the question here. Another case which is relied on is Willard v. Van Leeuwen, 56 Mich. 15, 22 N. W. 185, which was an action by a creditor against an executor who had not yet been discharged to compel him to pay a deficiency on a mortgage foreclosure. The assets had been distributed, and the claim had never been proven. The court held that the executor could not, in such circumstances, be held liable as for his own debt; Judge Champlin saying:

"In such case, if a creditor, after a great lapse of time, establishes a claim against the estate, he must take the estate in the situation in which he finds it, and cannot hold the executor liable as for his own debt."

This presupposes that it had been possible for the creditor to have established his claim, and had been guilty of laches in neglecting it. In Armstrong v. Loomis, 97 Mich. 577, 56 N. W. 938, the action was in assumpsit by a creditor to recover against an heir who had disposed of lands of the deceased to compel him to pay a debt which had been allowed by the probate court. The claim was an absolute one. It was held the action would not lie; Judge Grant, in the opinion, saying:

"Chapter 229, How. Ann. St., provides the only methods by which claims against the estates of deceased persons and the expenses of administration can be allowed and collected. If the personal estate is insufficient for those purposes, then the real estate may be sold, under the decree of the probate court. There is no law in this state for pursuing the estate in the hands of heirs or distributees"—citing Showers v. Robinson, 43 Mich. 508, 5 N. W. 988.

The case was one entirely within the scope of the probate laws, and was governed by their provisions. The language of the learned judge

is to be understood as referring to such conditions. Other Michigan cases are referred to in the brief for the appellees. We have referred to the more pertinent cases, and cannot prolong our opinion by further references. It must suffice to say that in none of the cases cited in support of the appellees' contention was the question which we have before us presented. There are, it is true, some expressions of judges which, taken by themselves, and without regard to the subject of decision, might be construed into a recognition of the proposition for which the appellees contend, namely, that there is no law recognized in Michigan for the enforcement of the obligations of deceased persons other than those comprised in its statutory probate system, and that that system affords no remedy for an obligation which does not become absolute before the limit of time during which the probate court is given power to afford a remedy. We are not aware of any decision elsewhere which attributes to the probate system of any state such a consequence, although many of them contain provisions from which an intention to exclude all other remedies could be as reasonably implied as from those in Michigan. But, recurring to the decisions of the state court, a later case than those we have canvassed is Allen v. Conklin, 112 Mich. 74, 70 N. W. 339. That was a bill filed by one who had been a ward against the executor and heirs of her deceased guardian to obtain an accounting and to establish a lien upon the decedent's lands in the hands of the heirs for the satisfaction of a liability of the guardian for the fraudulent conversion to his own use of moneys belonging to the ward. The bill was filed 12 years after the appointment of commissioners to hear claims, but the complainant excused herself by alleging that the facts had been concealed from her by the guardian, and she had only recently discovered them. There were no assets in the hands of the executor. It was claimed for the defendants that the time allowed by the statutes for the presentation of claims had long since elapsed, and that the probate court could not allow the claim, nor could it license the sale of the land, and that therefore the claim was barred; and the cases of Brown v. Forsche and Willard v. Van Leeuwen, supra, were cited. But the court said that those cases did not meet the case stated in the bill, and further said:

"Suppose it is true that so much time has now elapsed since the death of Richard Low (the guardian) that complainant could get no relief in the probate court, does it follow that equity cannot aid her? * * * Unless the statute of limitations has cut off her remedy, she has stated a case entitling her to the aid of a court of equity."

Reference is then made to a statute (How. Ann. St. § 8724) which reads:

"If any person who is liable to any of the actions mentioned in this chapter shall fraudulently conceal the cause of such action from the knowledge of the person entitled thereto, the action may be commenced at any time within two years after the person who is entitled to bring the same shall discover that he has such cause of action, although such action would be otherwise barred by the provisions of this chapter."

And thereupon Judge Moore, speaking for the court, said, "If the allegations of the bill are proven, we think a bill in equity will lie to reach the property still in the hands of the heirs, devisees or legatees

of Richard Low, deceased;" citing what is now section 9419 of the Compiled Laws of 1897, which enacts that "the creditor may have any proper action or suit in law or equity, and shall have a right to recover his claim against a part or all of such heirs, devisees, or legatees, to the amount of the estate they may have respectively received; but no such action shall be maintained unless commenced within one year from the time the claim shall be allowed or established;" and citing also the case of Chewett v. Moran (C. C.) 17 Fed. 820, in which Mr. Justice Brown, then District Judge for the Eastern District of Michigan, maintained the suit of a creditor to recover a contingent claim which had become absolute, from lands in the hands of the heirs of the obligor. Some criticism is bestowed by counsel in the present case upon the assumption in the case of Chewett v. Moran that a federal court in equity would adhere to its own rules in such a case, and was not bound by the limitations of the local law—an assumption which has since been dispelled. But the Supreme Court of Michigan cited the case as an authority for the more general doctrine that equity will aid a creditor in such circumstances, and applied it to a case where the claim had not come to light during the progress of the estate in the probate court, notwithstanding the contention that by the probate law the claim was barred. The relief given by the statute to one whose cause of action has been fraudulently concealed is essentially the same as that generally afforded by courts of equity. The provision is not found in the probate law, but is one of general application. We think the case of Allen v. Conklin must be regarded as refuting the contention that the probate laws afford the only remedy a creditor may have in Michigan for the recovery of a claim against the estate of a deceased person, and as establishing the proposition that, when those laws do not avail to protect equities arising from special circumstances, its equity courts will give relief by applying the principles and remedies peculiar to that jurisdiction. And such is the course of decisions in other states in reference to their probate systems and the jurisdiction of courts of law and equity when the probate laws are not adequate to give a remedy. Hall v. Martin, 46 N. H. 337; Bullard v. Moor, 158 Mass. 418, 33 N. E. 928; Mann v. Everts, 64 Wis. 372, 25 N. W. 209; McKeen v. Waldron, 25 Minn. 466; Hantzch v. Massolt, 61 Minn. 361, 63 N. W. 1069; Lake Phalen Land & Imp. Co. v. Lindeke, 66 Minn. 209, 68 N. W. 974; Dugger v. Oglesby, 99 Ill. 405; Payson v. Hadduck, 8 Biss. 203, Fed. Cas. No. 10,862; Security Co. v. Hansen, 104 Iowa, 264, 73 N. W. 596; Blair v. Allen, 55 Ind. 409; Walker v. Byers, 14 Ark. 246; Hendricks v. Keesee, 32 Ark. 714; Miller v. Shoaf, 110 N. C. 319, 14 S. E. 800.

Of course, a bill of this character ought to be filed within a reasonable time after the claim has matured, and unreasonable delay would constitute laches which would bar the suit. The cause of action here accrued January 20, 1902, and the bill was filed December 1st of the same year. It is not contended that the suit was unreasonably delayed.

It is unnecessary to go into argument to vindicate the principle of equity to which the complainant appeals. "Legatees," says Story, "are always compellable to refund in favor of creditors; because the latter

have a priority of right to satisfaction out of the assets." 1 Eq. Jurisp. § 92. In Noel v. Robinson, 1 Vern. 90, 94, the Lord Chancellor said: "The common justice of this court will compel a legatee to refund. It is certain that a creditor shall compel a legatee to refund." The legatee ought not to hold as a gift from the estate that which belongs to the creditors.

We appreciate what the learned judge said in delivering his opinion in the court below that "there ought to be a time when the assets of a deceased person should cease to be impressed with a trust for the payment of decedent's debts, and should become the absolute property of the heirs, devisees, distributees, and legatees." But the superior rights of creditors are also to be regarded, and, whatever his disappointment, the legatee has no just ground for complaint if the creditor makes his claim within such reasonable time as the law in the circumstances of the case allows him.

We are of opinion that the decree should be reversed, and the cause remanded, with direction to enter a decree for the complainant for the amount of the assessment of 40 per cent. stated in the bill, with interest from January 20, 1892, and that the appellant recover his costs. in the court below and in this court.