### THOMPSON v. GERMAN INS. CO. et al

(Circuit Court, D. Nebraska. December 14, 1896.)

#### No. 93.

1. LIMITATION OF ACTIONS—FRAUDULENT TRANSFERS OF BANK STOCK.

A suit by the receiver of an insolvent national bank to collect an assessment by the comptroller upon the stock from a stockholder who has made an alleged fraudulent transfer of his shares is based upon the statutory liability of the stockholder, and not upon any injury growing out of the fraudulent transfer; and therefore the statute of limitations begins to run from the date the assessment becomes due, and not from the discovery of the fraud.

2. SAME—SUIT BY RECEIVER—LACHES.

On a bill by the receiver of an insolvent national bank to collect an assessment by the comptroller on the stock from a former stockholder, on the ground that, to escape liability, he had transferred his shares, within six months of the failure of the bank, to one having no means, it appeared that the transfer was made on the books of the bank, no concealment thereof being attempted, and that the receiver made no inquiry as to the nature of the transfer, and took no action against defendant until the assessment had become barred. *Held,* that equity would not relieve against the bar of the statute.

Suit in equity by S. B. Thompson, receiver of the Central Nebraska National Bank, against the German Insurance Company and others, to recover the amount of an assessment upon certain shares of stock. The original bill was dismissed. See 76 Fed. 892.

Submitted on Demurrer to Amended Bill.

Harry E. O'Neil, for complainant.

James McNeny and Green & Breckenridge, for defendants.

SHIRAS, District Judge. This case has already been before the court upon demurrers filed to the original bill, and upon that hearing it was held that the proceeding was barred by the provisions of the statute of limitations of the state of Nebraska. Thereupon the complainant obtained leave to file an amended bill, and the case is now before the court upon a demurrer filed thereto, which again presents the question whether it does not appear upon the face of the amended bill that the suit is barred by the lapse of time.

Briefly stated, the facts appearing on the face of the amended bill are that the Central Nebraska National Bank of Broken Bow

was created and organized under the national banking act of the United States in 1888; that the German Insurance Company of Freeport, Ill., on the 22d of August, 1889, became the owner of 100 shares of the capital stock in said bank; that on September 8, 1890, there were issued to the named insurance company two certificates of 50 shares each of said capital stock, the original certificate for 100 shares being surrendered and canceled; that on same day, to wit, September 8, 1890, 50 shares of said stock were assigned by the insurance company to one Edgar E. Koehler, and on January 13, 1891, the remaining 50 shares were assigned by the insurance company to the said Koehler; that the said national bank continued in business until in July, 1891, when it closed its doors, and Henry C. Russell was appointed receiver by the comptroller of the currency, and acted in that capacity until January 29, 1895, when he resigned, and the present complainant was appointed in his place; that on the 13th day of July, 1892, the comptroller of the currency made an assessment of 90 per cent. upon the capital stock of the bank, and directed the shareholders to pay the same on or before the 3d day of August, 1892, and in the order making said assessment he directed the receiver to "take all necessary proceedings, by suit or otherwise, to enforce to that extent the said individual liability of the said shareholders." In the amended bill it is charged that the transfer of the stock by the insurance company to Koehler was without consideration, and was made by the insurance company for the purpose of escaping the statutory liability imposed upon stockholders in national banks; that when said transfer was made to Koehler he was an attorney at law, engaged in the practice of his profession at Omaha, Neb.; that he was in the employ of the insurance company, and was without capital. It is further alleged in the amended bill that on January 14, 1891, Koehler assigned to one W. E. B. Pierce 25 shares of the bank stock in question, and about the same time purchased from one Thompson 10 acres of land adjoining the city of Omaha, giving in exchange therefor the remaining 75 shares of stock received from the insurance company, and on the 18th day of March, 1891, the said Koehler purchased from the Benson Land Syndicate three lots in Benson Place, and in payment therefor Pierce assigned to the Benson Land Syndicate the 25 shares of bank stock previously assigned to him; that on April 13, 1891, Koehler transferred the 10 acres of land purchased from Thompson to a corporation known as the German Land & Mortgage Company, by whom it was transferred on June 1, 1891, to one Hendricks, who was, it is averred, at the time a clerk and bookkeeper for the German Insurance Company, and without means, but who gave his notes for $15,000 to the insurance company, secured by a mortgage on the 10 acres in question. It is further averred that in April, 1892, Hendricks leased the 10 acres for a term of three years to Thompson previously named, at a yearly rental of $300, taking his notes therefor, which notes the said Hendricks transferred to the insurance company; and said company now has pending in the courts of Nebraska a suit to collect said notes from the maker,

Thompson. It is also averred that the facts recited were not known to the comptroller of the currency, nor to the receivers appointed by him, until after the bringing of the suit by the insurance company against Thompson; and that it was not until in February, 1896, that the comptroller and the receivers became fully advised with regard thereto, and thereupon, on October 5, 1896, this proceeding was commenced by the filing of the original bill. Upon the hearing of the demurrer to the original bill it was held that the right of action on behalf of the receiver accrued to him on August 3, 1892, the date when the call made by the comptroller became due and payable, and that the statute of limitations began to run at that time; and, as it appeared that the statutory period, to wit, four years had elapsed before this suit was begun, the bar of the statute was complete. In support of the amended bill complainant · invokes the equitable rule that when relief is sought against fraud the statute is held applicable only from the time of the discovery of the fraud.

. If a party suffer an injury or wrong by reason of a fraud practiced by another, his right to a remedy in equity will not be affected by the lapse of time until discovery of the fraud is had, provided he is not guilty of negligence in ascertaining the facts. Is this general rule, however, applicable to a case of the character of that now under consideration? In this proceeding the receiver is not seeking equitable aid to have made good to him damages resulting from a fraud practiced on him by the defendants, nor is he seeking to set aside transfers of property in order that it may be subjected to legal process. What the receiver is seeking to do in fact is to enforce the statutory liability assumed by all parties who become shareholders in national banks. The underlying theory of complainant's case as against the German Insurance Company is that the insurance company, in August, 1889, became the owner of 100 shares of the capital stock of the named national bank, and thereby became liable to be called upon for an amount equal to the face value of the stock in case of the insolvency of the bank; that the bank became insolvent; that a legal assessment of 90 per cent. upon the face value of the shares was duly made; that the insurance company continues liable to the call thus made, notwithstanding the transfer made to Koehler, it being averred that Koehler is without means, and that the transfer was made to escape the liability in question. The right of action sought to be enforced by complainant is the liability imposed by the statute upon shareholders, and not a right of action created by the transfer of the stock to Koehler. The act of the insurance company in assigning the shares held by it to Koehler did not create a cause or right of action, no matter what its motive was in making the transfer. The real ground of action relied upon by complainant is that when the insurance company became a shareholder in the national bank by subscribing for and accepting 100 shares of the capital stock, it became subject to the statutory liability to respond to an amount equal to the face value of the stock held by it in case of the insolvency of the bank, and that this once existing

liability was not terminated by the subsequent transfer of the stock, because such transfer was made to one without means, and for the purpose of escaping the existing liability. The questions arising on the transfer of the stock present the issue whether the insurance company has a sufficient defense to the right of action asserted by the receiver, and based upon the liability assumed by the insurance company when it became a shareholder in the national bank. If the receiver recovers in this case against the insurance company, the recovery must be based upon the liability assumed by that company when it became a stockholder in the bank, and not upon any cause of action created by the transfer of the stock to Koehler. The theory of complainant's bill is that this transfer must be treated as of no account, and be wholly disregarded; or, in other words, that the liability of the insurance company is just what it would have been in case the transfer never had been made. The real purpose of the bill filed in this case is not to obtain relief against a wrong done or injuries inflicted or rights invaded by the alleged fraudulent transfer of the stock to Koehler, but to compel the insurance company to respond to the assessment made upon the shares of stock issued to it. All the relief sought by the bill would be fully met by a decree adjudging that the insurance company was liable to the assessment, and a judgment for the amount thereof would be clearly based upon the statutory liability assumed when the insurance company became a stockholder, and not upon any liability created by the transfer of the stock to a third person. The equitable rule that, where relief is sought against the consequences resulting from a fraud, the statute will be held to begin to run only upon the discovery of the fraud or of circumstances charging the party with the duty of inquiry, is based upon the proposition that, if the person injured by the fraud has not knowledge thereof, he cannot know that a right of action exists on his behalf, and he should not, therefore, be prejudiced by the lapse of time, when it cannot be said that he is in fault in not bringing suit. As already pointed out in this case, the cause of action and the right of action sought to be enforced by the receiver are not based upon the alleged fraudulent transfer of the stock by the insurance company, and the ultimate relief sought is not against the consequences thereof; but the relief sought is the enforcement of the liability claimed to still exist against the insurance company by reason of the fact that it had subscribed for and accepted 100 shares of stock of the national bank. When the assessment upon the capital stock was made by the comptroller, and the receiver was directed to enforce the collection of the assessment, he knew that a right of action then existed in his favor against all the shareholders then holding stock, and against all previous holders who had transferred the stock under circumstances which would not relieve them from liability for assessment subsequently made. The receiver well knew that the insurance company had held 100 shares of stock, and well knew that this stock had been transferred to Koehler, and he knew that, if he did not seek to hold the insurance company liable for the

assessment within the period allowed by the statute, he would at law be barred of his right of action. Having allowed the statutory time to elapse before bringing suit, what ground is there for holding that a court of equity will not enforce the bar of the statute? For these reasons it does not appear that the case is one for the application of the equitable principle that the statute of limitations does not begin to run until the discovery of the fraud against which relief is sought.

If, however, it be held that the case is one in which the application of the rule may be invoked, then the question arises whether the facts averred in the amended bill are sufficient to justify a court of equity in granting the relief, regardless of the lapse of time; or, in other words, whether the facts alleged excuse the delay in the institution of this suit. The general rules applicable to the question are already given by the supreme court in Wood v. Carpenter, 101 U. S. 135, and Hardt v. Heidweyer, 152 U. S. 547, 14 Sup. Ct. 671. In these cases it is declared that, if a party seeks to escape the plea of the statute of limitations on the ground that he did not discover the fraud complained of until immediately prior to the bringing the suit, he must aver and prove that he used due diligence; and this must be shown by the averments of facts, not of mere conclusions, it being "well settled that a party who seeks to avoid the consequences of an apparently unreasonable delay in the assertion of his rights on the ground of ignorance must allege and prove, not merely the fact of ignorance, but also when and how knowledge was obtained, in order that the court may determine whether reasonable effort was made by him to ascertain the facts." Hardt v. Heidweyer, supra. In Wood v. Carpenter, supra, it is said:

"There must be reasonable diligence; and the means of knowledge are the same thing, in effect, as knowledge itself. The circumstances of the discovery must be fully stated and proved, and the delay which has occurred must be shown to be consistent with the requisite diligence. The reply is clearly bad. It contains some vigorous declarations, but is wanting in the averment of facts which are indispensable to give it sufficiency as a pleading for the purpose intended."

In the case at bar the insurance company is sought to be held liable on the ground that it was the owner of 100 shares of stock in the named national bank, and, although it is admitted that this stock was transferred by the insurance company to Edward F. Koehler in September, 1890, and January, 1891, it is charged that this transfer was a fraud as against the creditors of the bank, because the bank was insolvent, and the transfer was made by the insurance company to escape liability thereon, the said Koehler being without means to respond to assessments made thereon. The question whether the liability assumed by the insurance company when it became a stockholder in the national bank was enforceable against it depended upon the character of the transfer of the stock to Koehler. When the receiver was appointed, and the comptroller ordered the assessment of 90 per cent. upon the capital stock of the insolvent bank, it became the duty of the receiver to enforce the payment of the assessment thus made against

all parties who might be liable therefor, and the proper performance of this duty required action on his part. The books of the bank, which were, of course, open to the receiver, showed that the insurance company had transferred the stock in question to Koehler. As the assessment upon these 100 shares of stock was not paid by the present holders, it was incumbent upon the receiver to take steps to enforce the payment; but it is not shown that any action was taken to that end. It is averred in the bill that Koehler at the time of the transfer of the stock to him was an attorney, residing at Omaha; that he was in the employ of the insurance company, and was without capital. It is not averred that these facts were not in fact known to the receiver from the date of his appointment. It is averred in general terms that the comptroller and receiver did not have knowledge of the facts in the bill recited, but this general averment is qualified by the statement that Henry C. Russell, the receiver first appointed, "did not know of the facts herein set forth, and had no means of knowledge of the discovery of said facts, and could not have discovered them, for the reason that at the time of the occupation of said office by the said Russell the facts detailed were not of public record, and were unknown to any person other than the parties thereby engaged in said transaction; and not until the commencement of the suit in the courts of Douglas county, Nebraska, by the German Insurance Company, to recover upon said rental notes referred to against said Thompson, did the facts become a matter of public record, and then not entirely until in February 1896." It is clear that this denial of knowledge cannot be intended to apply to the fact of the transfer of the stock by the insurance company to Koehler, and to the subsequent transfer thereof recited in the bill, because these appear on the books of the bank, and must have been known to the receiver. It could not have been the suit brought by the insurance company against Thompson which first enabled the receiver to know that Koehler was an attorney residing at Omaha, and that he was without capital. It must be held that the receiver knew, or else was grossly negligent in not knowing, that the insurance company had transferred the stock in question to Koehler; and the means of knowledge were open to the receiver to ascertain all that is now charged in the bill with regard to Koehler. It is not averred that the receiver ever made the slightest inquiry into the facts of the transfer to Koehler, or of the subsequent transfers of the stock that are set up in the bill. So far as it appears, the receiver never made any inquiry of any one with regard to the liability for the assessment made on these shares of stock, nor did he ever act in the premises until the attorneys in the suit against Thompson called his attention to the matter. It is admitted in the bill that all these matters were made of public record as early as February, 1896, but no action was taken by the receiver until in the following October. As already said, when the assessment of 90 per cent. upon the stock of the bank was made by the comptroller the receiver was charged with the duty of collecting this assessment, but it is not shown that he made the slightest inquiry into the circum-

stances surrounding the transfer of the stock originally held by the insurance company for more than four years after the transfer thereof, and it is not averred that he did not know during this entire period that the insurance company had transferred the stock to Koehler, who was an attorney in the employ of the company, and had no capital or means. The fact of the transfer by the insurance company was known to the receiver, and reasonable diligence on his part would have enabled him to ascertain the principal facts. Having wholly failed to exercise any diligence, equity will not afford relief against the bar of the statute.

If it was the fact that the insurance company had concealed the fact of the transfer of the stock to Koehler, a different question would be presented; but the fact is that the transfer was made upon the books of the bank. It is not charged that any concealment was practiced with regard to the transfer to Koehler, or with regard to any of the subsequent transfers, and it must be true that the receiver knew what the books of the bank showed with respect thereto, and he cannot be heard to say that he did not know what thus appeared upon the books. As receiver, complainant was charged with the duty of collecting the assessment upon these 100 shares of stock, and it was incumbent upon him to use reasonable diligence in ascertaining whether a liability for the assessment existed against the party whom he knew had transferred the stock within six months of the failure of the bank. The averments in the amended bill show that it was not through the action of the complainant that discovery was made of the facts upon which he now relies as grounds for relief against the insurance company, and as it is not averred that the complainant ever made an inquiry, or did anything looking to an ascertainment of the facts surrounding the transfer of the stock to Koehler, it follows, if complainant's theory is correct, that by simply remaining wholly inactive the complainant could prevent the statute from beginning to run. On behalf of the diligent, equity holds that in cases of fraud the limitation begins to run from the discovery of the fraud, or from the discovery of facts sufficient to put a prudent person on inquiry; but to the negligent equity grants no relief.

According to the complainant's own showing in the amended bill, for more than four years before this proceeding was commenced he and his predecessor knew that the insurance company, not many months before the bank closed its doors, and when it was in an insolvent condition, had transferred its stock to Koehler; and, if the receivers did not know that Koehler was without means, they could readily have ascertained the facts; and yet they remained wholly inactive. Under these circumstances it must be held that during this period the statute was running, and, the full period having elapsed after the right of action was vested in the receiver before this proceeding was commenced, it must be held that the same is barred by reason of the lapse of time.

Demurrer is therefore sustained, and the bill is dismissed on the merits, at cost of complainant.