ALDRICH v. YATES.

(Circuit Court, D. Kentucky. June 28, 1899.)

1. NATIONAL BANKS—ASSESSMENTS AGAINST STOCKHOLDERS ON INSOLVENCY.
    The action of the comptroller of the currency in making an assessment against the stockholders of an insolvent national bank is conclusive as to the necessity for such assessment, and cannot be questioned collaterally.[1]

2. SAME—POWER TO MAKE SECOND ASSESSMENT.
    The ultimate liability of a stockholder of an insolvent national bank, under Rev. St. § 5234, is for the full amount of the par value of his stock, if that amount is required; and when the comptroller makes an assessment for a smaller amount, he has power to make a second assessment, if the first proves insufficient to pay the debts of the bank.

3. SAME—LIMITATION OF ACTION AGAINST STOCKHOLDER.
    A right of action by the receiver of an insolvent national bank against a stockholder to recover an assessment does not arise until the necessity for the assessment has been determined and the assessment made by the comptroller, if it in fact accrues before demand and refusal to pay; hence limitation runs against such an action only from that time.

---

[1] As to liability of shareholders in national banks, see note to Beal v. Bank, 15 C. C. A. 130.

On Demurrer to Answer.

Francis F. Oldham, for plaintiff.
Boyce & Boyd and Michael Schlutz, for defendant.

EVANS, District Judge. This case has been considered with reference to the importance given to it by the fact that upon the decision of it many other cases may depend. The action is at law, and the plaintiff alleges in his petition that on the 6th day of February, 1893, the comptroller of the currency, having become satisfied of the insolvency of the national banking association known as the Bankers' & Merchants' National Bank of Dallas, Tex., appointed H. S. Hepburn receiver of said association; that at that time the defendant was, and has ever since been, the owner and holder of five shares of its capital stock, of the par value of $100 each, all of which stood in his name on the books of the bank at the time said receiver was appointed; that on the 6th day of July, 1893, the comptroller of the currency lawfully made an assessment against the shareholders of said association at the rate of $16 per share, the whole assessment against the defendant being $80, and that it was duly paid by him; that afterwards, on the 24th day of October, 1898, the plaintiff was duly appointed by the comptroller of the currency receiver of the said banking association, in succession to his predecessors who had resigned; that on the 31st day of October, 1898, the comptroller found and decided that the previous assessment was inadequate, and that, in order to pay the debts of said association, it was necessary to make a further assessment and requisition of $25,000 upon the shareholders, being the sum of $5 upon each share; that thereupon said assessment was made by said comptroller, and plaintiff was directed by him to take all necessary proceedings, by suit or otherwise, to enforce to that extent the individual liability of the shareholders for the amount so assessed and so found to be necessary; and that defendant was then notified of said assessment against him, and payment thereof was demanded on or about November 1, 1898, but has not been made. The action was commenced March 4, 1899. The defendant, by his answer, admits the material allegations of the petition, but insists—First, that the assessment of $80, together with the assets which came into the hands of the receiver of the bank, were sufficient to pay all the liabilities of the association, and therefore claims that the comptroller exhausted his power in the premises when he made the assessment of July 6, 1893; and second, that the plaintiff's cause of action is barred by the Kentucky statute of limitations, because he says it arose more than five years before this action was commenced. The plaintiff has filed a general demurrer to the answer, and thus presents interesting and important, although not novel, questions.

It is to be regretted that the first contention of defendant is somewhat confused by the attempt to put it upon the ground, among other things, that the first assessment and the assets of the bank were, as matter of fact, sufficient to pay all the liabilities, and therefore that the comptroller could not make another assess-

ment upon the shareholders. The question argued by counsel for defendant is not precisely the one, thus raised. He rather puts his case upon the ground that the first exercise of the power to assess per se exhausted it, whether it resulted in obtaining sufficient funds or not. However, the court must first determine whether the issue of fact thus presented by the pleading demurred to requires that the demurrer shall be overruled. This depends upon whether the answer presents a sufficient defense, if its averments are true. It will be observed that the statement is that the defendant "is informed and believes, and therefore avers," etc. Under the Kentucky Code of Practice it might be doubted whether this indirect form of statement is good pleading, generally; but the doubt upon the subject will be solved against the pleading, upon the ground that the action of the comptroller in making the assessment, if he had the power to make it at all, was final and conclusive, and not open to collateral inquiry or attack, and of course not upon the alleged ground that the assets of the bank and the $80 assessment were sufficient to pay the debts of the bank. What the comptroller determines, in making what are for convenience called "assessments," is that under section 5234 it is necessary to enforce the individual liability of the stockholders. That is a fact which he alone can determine under the statute, and his finding is conclusive, as has been expressly ruled in Kennedy v. Gibson, 8 Wall. 505, a case which has ever since been the guide in this class of litigation. The comptroller had determined, in the first instance, as the facts then appeared to him, that it was necessary to enforce that liability to the extent of $16 per share; and in the second instance he has determined that it is necessary to enforce it to the extent of another and further $5 per share. This decision cannot be called in question collaterally, and hence the defendant's averment that the first assessment and the bank's assets were sufficient is immaterial. No harm can come to stockholders from this rule, inasmuch as, in the event of raising an excessive sum, the stockholders will ultimately get it back.

The question, then, remains, has the comptroller of the currency the power to make a second assessment in any event? The ultimate liability of the shareholder in such cases is for the full amount of the par value of the stock (section 5151), under the statutory conditions, if they are found by the comptroller to exist. A mistake of that officer in making an estimate of the amount of a needed assessment cannot be held to release the shareholder from the full statutory liability. A mistake of such a character would be natural, if not inevitable, in many instances, in view of the uncertain value of assets; and the indisposition in the first instance to make an assessment unnecessarily large may well excuse its not being done, when there is certainly no statutory provision prohibiting, in terms or by necessary implication, further assessments, if the necessity exists. In practice, second assessments have frequently been made. The court is of opinion that such a course is within the power of the comptroller, in the exercise of his duty to see that the liability of the stockholder is sufficiently enforced

to pay the debts of the bank, and that practice has been recognized as proper by the supreme court. See U. S. v. Knox, 102 U. S. 422.

The plea of the statute of limitations raises the other question to be determined. The provision of the law applicable to the case is contained in section 2515 of the Kentucky Statutes, which provides that actions upon liabilities created by statute shall be brought within five years after the cause of action accrued, when the statute creating the liability fixes no other period. The national banking act fixes none. The sole question, then, is, when did the cause of action accrue upon the amount sued for in this case? for that alone is the subject-matter of this action. The plea of the defendant does not relate to anything else. There is no requirement in the national banking act that the assessment shall be made by the comptroller within any particular time, and this suit is not brought to enforce any general liability of the shareholder, but only to enforce the payment of this particular assessment. The general liability of the shareholder is created by operation of the statute eo instanti his becoming a shareholder, but there did not then arise a cause of action upon that liability; nor did the right to bring a suit arise upon that liability merely by virtue of the appointment of a receiver, who could only act under the directions of the comptroller. The right to enforce that liability by suit could not arise until after the creation of debts beyond the ability of the bank to pay, nor until after the appointment of a receiver, nor, indeed, until the amount needed was ascertained and fixed by the comptroller. If the last proposition is true, the statute does not bar this action. That a right of action would have accrued on the first assessment as soon as there was a demand for its payment is clear. If the then receiver, in that instance, had sued for more than $16 per share then assessed, could he have recovered for the excess? Clearly not; and the reason necessarily is that no cause of action for a greater sum had then arisen. If this test be the true one, it would seem to settle this case, particularly as the national banking act fixes no period within which the conclusive determination of the comptroller that the amount is necessary and must be collected shall be made. No action can ever be brought by the comptroller in his own name, and none can be brought by the receiver until he is directed to bring it, nor until the quasi judgment of the comptroller has been rendered to the effect that a further draft must be made upon the statutory liability of the shareholder. The liability, in general terms, exists; but a cause of action upon that liability—that is to say, the right of the receiver to sue upon it—does not exist nor arise until the assessment is made by the comptroller, for until that time the amount is neither due nor demandable nor payable. And the court is of the opinion that some importance should be attached to the great probability that no right of action in cases like this really accrues until there has been a demand of payment and a refusal to pay. In short, as the national banking act fixes no definite time within which the comptroller of the currency must act, as there is nothing due or payable on the liability of the share-

holder in such cases until the comptroller has ascertained and fixed the sum to be collected upon each share of stock, as the right to sue is exclusively in the receiver, as his right to maintain the action or bring the suit for any sum does not arise until the amount to be demanded and received has been ascertained by his superior officer, and as in this case the answer has not shown that the comptroller had determined that it was necessary to further enforce to the extent of $5 per share the liability of the stockholder before March 4, 1894, nor, indeed, before October, 1898, it follows that five years have by no means elapsed since this liability became suable. I think these views are supported by the following authorities: Kennedy v. Gibson, 8 Wall. 505; Hawkins v. Glenn, 131 U. S. 319, 9 Sup. Ct. 739; Glenn v. Liggett, 135 U. S. 533, 10 Sup. Ct. 867; Young v. Wempe, 46 Fed. 354; Thompson v. Insurance Co., 76 Fed. 892; Id., 77 Fed. 258. The conclusion I have reached is that the right of action in this case exists by virtue of those acts of the comptroller called "assessments," and that the remedy is not barred by any statute of limitations, because the right of the receiver to sue did not arise until long after March 4, 1894.

The demurrer to the answer is sustained, and, if no desire to amend is manifested, judgment may be entered for the amount sued for, with costs of the action.