### RANKIN v. MILLER et al.

#### (District Court, D. Delaware. July 15, 1913.)

#### No. 231.

1. BANKS AND BANKING (§ 250*)—STOCKHOLDERS' LIABILITY—ACTIONS TO ENFORCE—NATURE AND FORM.

Under Rev. St. § 5151 (U. S. Comp. St. 1901, p. 3465), making the shareholders of national banking associations individually responsible for all contracts, debts, and engagements of such association, to the extent of the par value of their stock in addition to the amount invested in such shares, where, in a suit by the receiver of a national bank, the bill seeks a recovery, not of the total statutory liability, but only of a fractional part thereof as assessed by the Comptroller of the Currency, the suit is, within the equitable jurisdiction of the court.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 932–939; Dec. Dig. § 250.*]

2. BANKS AND BANKING (§ 248*)—STOCKHOLDERS' LIABILITY—ENFORCEMENT.

The Comptroller of the Currency has power to appoint a receiver for an insolvent national bank and to call for a ratable assessment upon stockholders without a previous judicial ascertainment of the necessity for such action.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 913–915, 919–931; Dec. Dig. § 248.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. BANKS AND BANKING (§ 248*)—STOCKHOLDERS' LIABILITY—ENFORCEMENT.

The Comptroller of the Currency has power to decide whether the whole or only a part of the statutory liability of stockholders of insolvent national banks shall be enforced, and when, and to make more than one assessment as may be required, his judgment or decision in such particulars and on the question of insolvency being conclusive; and hence in a suit by the receiver of a bank to enforce such liability the Comptroller's order making the assessment sued on and reciting the necessity therefor was conclusive.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 913–915, 919–931; Dec. Dig. § 248.*]

4. BANKS AND BANKING (§ 248*)—STOCKHOLDERS' LIABILITY—ENFORCEMENT.

In an action by the receiver of a national bank to enforce an assessment made by the Comptroller of the Currency against the stockholders, it could not be shown that the enforcement of such assessment would be inconsistent with or would defeat the provision of Rev. St. § 5151 (U. S. Comp. St. 1901, p. 3465), making stockholders liable "equally and ratably and not one for another"; this question being concluded by the Comptroller's finding of the necessity for such assessment and order making it.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 913–915, 919–931; Dec. Dig. § 248.*]

5. LIMITATION OF ACTIONS (§ 2*)—APPLICATION OF STATE STATUTES—STOCKHOLDERS' LIABILITY—ENFORCEMENT.

Actions to enforce the statutory liability of stockholders of national banks are governed by the statutes of limitations of the state where the suit is brought, so far as applicable.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 4–8; Dec. Dig. § 2.*]

6. LIMITATION OF ACTIONS (§ 58*)—COMPUTATION—STOCKHOLDERS' LIABILITY.

Limitations will not run against the right of action to enforce the statutory liability of stockholders of national banks until the cause of action has fully matured through the making of an assessment and the arrival of the day when it becomes payable.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 324–328, 346, 347; Dec. Dig. § 58.*]

7. BANKS AND BANKING (§ 250*)—STOCKHOLDERS' LIABILITY—ENFORCEMENT.

Laches on the part of the Comptroller of the Currency in failing to collect an earlier assessment and in undertaking the collection of the one sued on was not a defense to a suit to enforce the statutory liability of stockholders of national banks, since these matters are committed exclusively to his judgment, and his action must be treated as seasonable and regular.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 932–939; Dec. Dig. § 250.*]

8. BANKS AND BANKING (§ 250*)—STOCKHOLDERS' LIABILITY—ENFORCEMENT.

Under Rev. St. § 5151 (U. S. Comp. St. 1901, p. 3465), making stockholders of national banks liable for the debts of the bank to the extent of the par value of the stock, in addition to the amount invested therein, and section 5152, providing that executors, etc., shall not be personally liable, but that the estates and funds in their hands shall be liable in like manner and to the same extent as the testator, intestate, etc., would be if living and competent to act and hold the stock, the receiver of an insolvent bank, before suing to enforce the liability of the estate of a deceased stockholder, was not required to establish his claim before the register of wills having jurisdiction over the settlement of the decedent's

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

estate, to make demand upon the executors for payment, or to present to them an affidavit as required by the laws of the state.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 932–939; Dec. Dig. § 250.*]

9. LIMITATION OF ACTIONS (§ 22*)—BONDS—STOCKHOLDERS' LIABILITY—ENFORCEMENT.

The laws of a state in which an executor was appointed, prohibiting the bringing of any action upon any testamentary bond against either principal or sureties more than six years from its date, did not prevent an action by the receiver of an insolvent national bank against the executors and legatees of a deceased stockholder to enforce the stockholder's statutory liability, although brought more than six years after the date of the bond; the action not being brought upon the bond or against the executors' sureties.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 100–111; Dec. Dig. § 22.*]

10. BANKS AND BANKING (§ 250*)—STOCKHOLDERS' LIABILITY—ENFORCEMENT.

Demand of, or notice to, stockholders of an insolvent national bank by the Comptroller of the Currency or receiver is not a prerequisite to the maintenance of a suit to enforce the stockholders' statutory liability.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 932–939; Dec. Dig. § 250.*]

11. BANKS AND BANKING (§ 248*)—STOCKHOLDERS' LIABILITY—NATURE.

Under Rev. St. § 5151 (U. S. Comp. St. 1901, p. 3465), making stockholders of national banks liable to the extent of the par value of their stock, in addition to the amount invested therein, for the debts of the bank, this double liability is the resultant of the contract by which the stockholder acquires the stock and of the statute.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 913–915, 919–931; Dec. Dig. § 248.*]

12. BANKS AND BANKING (§ 248*)—STOCKHOLDERS' LIABILITY—LIABILITY OF ESTATE OF STOCKHOLDERS.

Under Rev. St. § 5151 (U. S. Comp. St. 1901, p. 3465), making stockholders of national banks liable for the debts of the bank to the extent of the par value of their stock, in addition to the amount invested therein, and section 5152, providing that persons holding stock as executors, etc., shall not be personally liable as stockholders, but that the estates and funds in their hands shall be liable in like manner and to the same extent as the testator, intestate, etc., would be if living and competent to act and hold the stock, where, after a stockholder's death, the bank became insolvent, the liability attached to the estate in the hands of the executor, and became a charge or lien thereon from the date the bank was declared insolvent, if not from the date of the stockholder's death, or the date of the executors' qualification, and not from the date of the Comptroller's order levying an assessment only.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 913–915, 919–931; Dec. Dig. § 248.*]

13. BANKS AND BANKING (§ 248*)—STOCKHOLDERS' LIABILITY—LIABILITY OF STOCKHOLDER'S EXECUTOR.

Under Rev. St. § 5151 (U. S. Comp. St. 1901, p. 3465) making stockholders of national banks liable for the debts of the bank to the extent of the par value of their stock, in addition to the amount invested therein, and section 5152, providing that persons holding stock as executors, etc., shall not be personally liable as stockholders, but that the estates and funds in their hands shall be liable in like manner and to the same extent as the testator, intestate, etc., would be if living and competent to act and hold the stock, where, before distribution of the estate of a deceased stockholder, the bank was declared insolvent, although no assessment against the stock was levied until after distribution of the estate,

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

and the executors, with knowledge or means of knowledge of the estate's liability, fully distributed the estate, without requiring any refunding bond or other security from the distributees, the executors, although not liable as stockholders, were liable for their wrongful act in disposing of the estate in such manner as to deprive the bank's creditors of the benefit of the charge or lien thereon created by the statute, even though they did not in fact intend to defraud or wrong such creditors.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 913-915, 919-931; Dec. Dig. § 248.*]

14. BANKS AND BANKING (§ 250*)—STOCKHOLDERS' LIABILITY—ENFORCEMENT.
In a suit by the receiver of an insolvent national bank against the executors and legatees of a deceased stockholder to recover the amount of an assessment against the stock levied by the Comptroller of the Currency, where it appeared that the estate had been fully distributed, a recovery could be had against the executors for their wrongful act in distributing the estate so as to deprive the bank's creditors of their charge or lien thereon, under the prayer of the bill for other and further relief.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 932-939; Dec. Dig. § 250.*]

15. BANKS AND BANKING (§ 248*)—STOCKHOLDERS' LIABILITY—LIABILITY OF STOCKHOLDER'S EXECUTOR.
Where executors of a stockholder of a national bank, which became insolvent before distribution of the estate, knew that the stock belonged to the estate, as evidenced by its inclusion in the inventory and appraisement, and in such inventory and appraisement valued it at one-tenth of its par value, showing that they had cause to suspect the bank's embarrassment or insolvency, they were put upon inquiry as to its financial condition, and charged with knowledge of the estate's statutory liability.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 913-915, 919-931; Dec. Dig. § 248.*]

In Equity. Suit by George C. Rankin, receiver of the First National Bank of Alma, Kan., against Charles R. Miller and James Baily, executors of Robert H. Miller, deceased, and others. Judgment in favor of plaintiff against Miller and Baily.

See, also, 199 Fed. 342.

Ward, Gray & Neary, of Wilmington, Del., for complainant.
Willard Saulsbury and Hugh M. Morris, both of Wilmington, Del., for defendants.

BRADFORD, District Judge. This is a suit in equity brought by George C. Rankin, a citizen of Illinois, receiver of the First National Bank of Alma, Kansas, hereinafter referred to as the Alma bank, against Charles R. Miller and James Baily, executors of Robert H. Miller, deceased, and trustees under his will, the Equitable Guarantee and Trust Company, Annie M. Baily, Elizabeth M. Baily, and the said Charles R. Miller, citizens of Delaware, and Wilmer W. Miller and R. Miller Baily, non-residents of Delaware, whose residence is unknown to the complainant, for the purpose of collecting the amount of an assessment made by the comptroller of the currency upon certain shares of the capital stock of the Alma bank held and owned by the decedent at the time of his death. The material facts either admitted or proved beyond controversy are as follows: The Alma bank was incorporated in August, 1887, under the national bank act, and

thereafter conducted business at Alma, Kansas, until November, 1890, when it suspended payment of its obligations and became insolvent and was so declared by the then comptroller of the currency. Miller, the decedent, acquired October 20, 1888, 150 shares of the capital stock of the Alma bank, each of the par value of $100, and continued to hold and own the same until his death which occurred August 31, 1890; and thereafter his name continued on the books of the bank as owner of the shares in question until after the filing of the bill herein April 30, 1902. He left a will, proved and allowed in New Castle County, Delaware, October 28, 1890, on which letters testamentary were duly granted to the above named Charles R. Miller and James Baily December 22, 1890, who filed an inventory and appraisement of the personal property of the decedent, duly verified by them April 20, 1892, before the register of wills, specifically including therein the 150 shares of stock at a valuation of only one-tenth of their par value. They passed their first and final account October 3, 1892, showing a balance, after the payment of debts and expenses, of $18,991.75 for distribution among the legatees under the will. This balance was paid in full to the legatees between October 5 and October 15, 1892, acquittances therefor being duly executed and delivered to the executors. Several months thereafter, namely, January 6, 1893, the comptroller of the currency caused an assessment to be made upon the stockholders and stock of the Alma bank for $33,000, payable on or before January 20, 1893, being 44% upon each and every share of its capital stock, which amounted to $75,000 at par. It subsequently appearing that the above mentioned sum of $33,000 assessed as above stated, but not collected, was inadequate to discharge its debts, a second assessment was duly made by order of the comptroller of the currency November 22, 1900, for the sum of $10,950, or $14.60 upon each and every share of the stock of the bank, payable December 22, 1900. This second assessment upon the 150 shares held by the executors amounted to $2,190, and it is for the collection of this sum with interest thereon from December 22, 1900, that this suit has been brought. The complainant was appointed receiver December 31, 1901, and the bill, as above stated, was filed April 30, 1902. It does not appear that at the latter date any part of the decedent's estate was in the hands of the beneficiaries, executors or trustees under his will. Nor does it appear that the 150 shares held by the decedent at the time of his death were at any time formally transferred to his executors or passed to them otherwise than by operation of law. Nor does it appear that the executors, or either of them, transferred to others those shares or any of them at any time. Nor does it appear that the executors required from the beneficiaries under the will before or after distributing the decedent's estate among them any refunding bond or other security which might be required for the payment of any assessment or assessments which might be made under the order of the comptroller of the currency.

The bill prays, aside from subpœna and answer, that the sum claimed under the second assessment on the shares in question, namely, $2,190 with interest as aforesaid, be "declared a lien upon all the

estate of the said Miller that may have been received by the beneficiaries under the will of the said Robert H. Miller as aforesaid, or by the executors and trustees as aforesaid"; that such executors, trustees and beneficiaries be restrained from spending or disposing of any part of the said estate which "may be held by said executors, trustees or beneficiaries, and that an account may be had"; and further, that the defendants be decreed to be "collectively and severally indebted" to the complainant in the said sum of $2,190, with interest thereon as aforesaid, and that they "jointly and severally" be decreed and ordered to pay the same to the complainant; and for "such other and further relief as the circumstances and nature of the case, and equity, may require."

The grounds on which the defendants resist the making of the decree against them are, in substance, as follows: (1) That the second assessment was unnecessary and unlawful; (2) that there was gross laches on the part of the complainant and his predecessors in office and the public officials connected with the ordering or making of the assessments; (3) that the comptroller of the currency had no authority to collect from the defendants, or any of them, or to call upon them, or any of them, to pay the second assessment upon the shares of stock in question; (4) that the executors have no assets in their hands belonging to the decedent's estate and have not had any since October, 1892, the executors having then fully administered the estate and made final distribution thereof, and the said estate having thereby become "extinguished"; (5) that prior to the distribution of the estate no demand was made upon the executors for the payment of any assessments, and "no affidavit as required by section 29, chapter 89, of the Revised Code, was ever presented to the executors"; (6) that it does not appear that the distributees of the estate of the decedent received any property capable of being followed and identified as part of such estate; and (7) that no action can under the laws of Delaware be brought upon any testamentary bond against either the principal or sureties after the expiration of six years from its date, and therefore the defendants are not liable as executors for the claim set forth in the bill.

The provisions of law upon which this suit is founded are sections 5151 and 5152 of the Revised Statutes of the United States (U. S Comp. St. 1901, p. 3465). The former, so far as material to this case, provides:

"The shareholders of every national banking association shall be held individually responsible, equally and ratably, and not one for another, for all contracts, debts, and engagements of such association, to the extent of the amount of their stock therein, at the par value thereof, in addition to the amount invested in such shares."

Section 5152 is as follows:

"Persons holding stock as executors, administrators, guardians, or trustees, shall not be personally subject to any liabilities as stockholders; but the estates and funds in their hands shall be liable in like manner and to the same extent as the testator, intestate, ward, or person interested in such trust funds would be, if living and competent to act and hold the stock in his own name."

[1] Preliminarily it should be stated that as the bill seeks the recovery, not of the total statutory liability of $100 per share on the capital stock of the Alma bank, but only of a fractional part or percentage thereof, this suit comes within the equitable jurisdiction of this court. Kennedy v. Gibson, 8 Wall. 498, 19 L. Ed. 476; Casey v. Galli, 94 U. S. 673, 24 L. Ed. 168.

[2, 3] It is well settled that the comptroller of the currency has power to appoint a receiver for an insolvent national bank and call for a ratable assessment upon stockholders without a previous judicial ascertainment of necessity for such action. Kennedy v. Gibson, 8 Wall. 498, 19 L. Ed. 476; Casey v. Galli, 94 U. S. 673, 24 L. Ed. 168; United States v. Knox, 102 U. S. 422, 26 L. Ed. 216; In re Chetwood, 165 U. S. 443, 458, 17 Sup. Ct. 385, 41 L. Ed. 782; Bushnell v. Leland, 164 U. S. 684, 17 Sup. Ct. 209, 41 L. Ed. 598. He has power to decide whether the whole or only a part of the statutory liability shall be enforced, and when, for the benefit of the bank's creditors and to make more than one assessment as may be required for that purpose; his judgment or decision on the question of insolvency and in the above particulars being conclusive upon the stockholders. McClaine v. Rankin, 197 U. S. 154, 25 Sup. Ct. 410, 49 L. Ed. 702, 3 Ann. Cas. 500; Studebaker v. Perry, 184 U. S. 258, 22 Sup. Ct. 463, 46 L. Ed. 528; Kennedy v. Gibson, 8 Wall. 498, 19 L. Ed. 476; Casey v. Galli, 94 U. S. 673, 681, 24 L. Ed. 168; United States v. Knox, 102 U. S. 422, 26 L. Ed. 216; Studebaker v. Perry, 102 Fed. 947, 43 C. C. A. 69; Rankin v. Barton, 199 U. S. 228, 26 Sup. Ct. 29, 50 L. Ed. 163; Christopher v. Norvell, 201 U. S. 216, 26 Sup. Ct. 502, 50 L. Ed. 732, 5 Ann. Cas. 740; Aldrich v. Yates (C. C.) 95 Fed. 78; National Bank v. Case, 99 U. S. 628, 25 L. Ed. 448; Aldrich v. Campbell, 97 Fed. 663, 38 C. C. A. 347; Young v. Wempe (C. C.) 46 Fed. 354; Welles v. Stout (C. C.) 38 Fed. 67; Deweese v. Smith, 106 Fed. 438, 45 C. C. A. 408, 66 L. R. A. 971. In Kennedy v. Gibson, supra, the court said:

"It is for the comptroller to decide when it is necessary to institute proceedings against the stockholders to enforce their personal liability, and whether the whole or a part, and if only a part, how much, shall be collected. These questions are referred to his judgment and discretion and his determination is conclusive. The stockholders cannot controvert it. It is not to be questioned in the litigation that may ensue. He may make it at such time as he may deem proper, and upon such data as shall be satisfactory to him."

In Casey v. Galli, supra, there was a demurrer to a plea in an action to enforce the stockholders' statutory liability to the effect that the comptroller was attempting to exact from only a portion of the stockholders, including the defendant, a sum sufficient to pay all the debts and liabilities of the bank without contribution from and regardless of other stockholders. The court said:

"It is a sufficient objection to this plea that the comptroller has ordered that each stockholder shall pay to the receiver the par of his stock. This order cannot be controverted in a suit against the stockholder. It is conclusive upon him, and makes it his duty to pay. Kennedy v. Gibson and Others, 8 Wall. 498 [19 L. Ed. 476]. What may be done or intended with respect to other stockholders is immaterial in his case."

In the same case there was another plea, demurred to, to the effect that the comptroller had decided to pay claims against the bank for which it was not responsible, and that, aside from those claims, he possessed sufficient means to meet the liabilities of the bank. With respect to this plea the court said:

"The same objection lies to this plea as to the preceding one, and the same authority applies. If the receiver intends to violate, or shall violate, his duty in discharging the trust confided to him, the remedy must be sought in another proceeding. It cannot avail the defendant in this action."

The orders of the comptroller of the currency for both assessments against the stockholders of the Alma bank, dated respectively January 6, 1893, and November 22, 1900, are on their face plain and unambiguous and entitled to conclusive effect in suits against such stockholders, under the doctrine established by the cases above cited and many others to which it is unnecessary to refer. In each order the comptroller, in substance, recites that upon a proper accounting by the receiver and a valuation of the assets it appeared to the comptroller's satisfaction to be necessary for the payment of the bank's debts to enforce the stockholders' individual or statutory liability to the extent therein mentioned, makes assessment and requisition for the same upon them, to be paid ratably on or before the day and year therein mentioned, and directs the receiver to take all necessary proceedings by suit or otherwise for the collection of the same; the first assessment being made payable on or before January 20, 1893, and the second assessment on or before December 22, 1900, and the order for the second assessment reciting that the amount of the first was inadequate to pay the debts of the bank.

On the part of the defendants some reliance seems to be placed upon United States v. Knox, 102 U. S. 422, 26 L. Ed. 216, where an application for a writ of mandamus against the comptroller of the currency to compel him to order a further assessment against the stockholders of a national bank was denied on the ground that the refusal by the comptroller to order such further assessment was "because the enforcement of such assessment would compel the solvent shareholders to pay the sums and proportions due from the shareholders who are insolvent." With respect to this case it should be noted, first, that the conclusion of the comptroller was upheld by the Supreme Court; secondly, that the proceeding was directly, and not collaterally, against the comptroller; and, thirdly, the court recognized the doctrine of the conclusiveness of the comptroller's findings in a suit brought by a receiver against a shareholder for the enforcement of the statutory liability, for it was pointedly declared:

"Nothing in this opinion is intended in any wise to affect the authority of Kennedy v. Gibson and Others, 8 Wall. 498 [19 L. Ed. 476], and Casey v. Galli, 94 U. S. 673 [24 L. Ed. 168]. On the contrary, we approve and reaffirm the rule laid down in those cases."

[4] An attempt was made during the taking of testimony in this case to show that the enforcement of the order for the second assessment, now sued on, would be inconsistent with and calculated to defeat the "equally and ratably, and not one for another" provision of

207 F.—39

section 5151, and therefore it is claimed the order was invalid. But any such question is concluded by the finding and order of the comptroller. Casey v. Galli is decisive here. There the demurrer to the first plea admitted that the comptroller was attempting to exact from the defendant and some of the other defendant stockholders a sum sufficient to pay all the bank's indebtedness, without contribution from other stockholders. But as above stated the court said that "this order cannot be controverted in a suit against the stockholder. It is conclusive upon him, and makes it his duty to pay." There the objection overruled by the court was based upon facts admitted by demurrer. Here the objection is based only upon deductions made from a part of the testimony.

[5, 6] In the absence of any provision in the act of congress creating the double liability of stockholders of national banks fixing a period of limitation within which actions for its enforcement must be brought, the statute of limitations of the state where suit is brought governs, so far as applicable. McClaine v. Rankin, 197 U. S. 154, 25 Sup. Ct. 410, 49 L. Ed. 702, 3 Ann. Cas. 500. But the period of limitation will commence to run only from the time the cause of action has fully matured through the making of an assessment and the arrival of the day when it becomes payable. Aldrich v. Skinner (C. C.) 98 Fed. 375; Aldrich v. McClaine (C. C.) 98 Fed. 378; McDonald v. Thompson, 184 U. S. 71, 72, 76, 22 Sup. Ct. 297, 46 L. Ed. 437; Kennedy v. Gibson, 8 Wall. 498, 19 L. Ed. 476; Aldrich v. Yates (C. C.) 95 Fed. 78; Rankin v. Barton, 199 U. S. 228, 26 Sup. Ct. 29, 50 L. Ed. 163; McClaine v. Rankin, 197 U. S. 154, 25 Sup. Ct. 410, 49 L. Ed. 702, 3 Ann. Cas. 500. The second assessment for the collection of which this suit was brought was made November 22, 1900, and became payable December 22, 1900, a period of only one year, four months and eight days before the filing of the bill. It is thus clear that this suit is not directly or indirectly barred by any provision of the general statutes of limitation of Delaware. There is a broad distinction between the maturing of a liability as a prerequisite to the successful prosecution of an action for its enforcement, and the attaching of the liability upon the declaration of insolvency or the acquisition of the stock.

[7-10] Much has been said on behalf of the defendants on the subject of laches on the part of the comptroller of the currency in failing to collect the first assessment and in not sooner undertaking the collection of the second. But these were matters committed exclusively to his judgment and, involving careful ascertainment and collection of the assets and an account of the debts and liabilities of the bank over and above such assets, his action must be treated as seasonable and regular and cannot be questioned in a suit brought by the receiver against a stockholder. The law as settled by the authorities will not permit this court to assume or find that the second assessment could have been earlier made and declared payable. It is equally well settled that the receiver was under no obligation before suing in this court to establish his present claim either within or after a year from its full maturity before the register of wills having juris-

diction over the settlement of the decedent's estate. Rankin v. Herod (C. C.) 140 Fed. 661; Rankin v. City of Big Rapids, 133 Fed. 670, 66 C. C. A. 568. Nor is there any force in the contention that no action can under the laws of Delaware be brought upon any testamentary bond, against either principal or sureties, after the expiration of six years from its date, and therefore the defendants are not liable as executors for the claim set forth in the bill. This action is not brought upon the testamentary bond of Miller and Baily, or against their sureties therein. It is simply a corollary from the authorities previously referred to that there was and could be no obligation on the part of the receiver to sue within six years on the testamentary bond above mentioned, or to make demand prior to distribution of the estate, upon the executors for the payment of any assessments or to present to the executors an "affidavit as required by section 29, chapter 89 of the Revised Code." Nor as settled by the authorities is any demand of or notice to stockholders by the comptroller or the receiver a prerequisite to the maintenance of suit to enforce the double liability.

The more substantial questions in this case are raised or suggested by the contention of the defendants that the executors have no assets in their hands belonging to the decedent's estate and have not had any since October, 1892, the executors having then, as alleged, fully administered the estate and made final distribution thereof and the estate having thereby become "extinguished," and that it does not appear that the distributees of the estate of the decedent received any property capable of being followed and identified as part of such estate.

[11, 12] This suit was brought, not against the decedent, who had acquired and was the owner and registered holder of the 150 shares of the capital stock of the Alma bank at the time of his death August 31, 1890, but against the executors and trustees under his will, and his legatees. The double liability of a stockholder of a national bank is the resultant of the contract by which he acquires such stock and of the statute providing for such liability, and survives against his estate. Matteson v. Dent, 176 U. S. 521, 20 Sup. Ct. 419, 44 L. Ed. 571; Richmond v. Irons, 121 U. S. 27, 7 Sup. Ct. 788, 30 L. Ed. 864. In Matteson v. Dent, supra, the court said:

"The obligation of a subscriber to stock, to contribute to the amount of his subscription for the purpose of the payment of debts, is contractual, and arises from the subscription to the stock. True, whether there is to be a call for the performance of this obligation depends on whether it becomes necessary to do so in consequence of the happening of insolvency. But the obligation to respond is engendered by and relates to the contract from which it arises. This contract obligation, existing during life, is not extinguished by death, but like other contract obligations survives and is enforceable against the estate of the stockholder."

By force and virtue of the contract of purchase or assignment by which the decedent acquired the 150 shares, in connection with the provision of section 5151, he incurred a conditional liability to pay pursuant to the assessment and requisition of the comptroller, a sum of money not exceeding their par value, on account of the debts of the Alma bank, should it be declared insolvent by that official. The shares

of stock passed by force of law to the decedent's executors and his conditional liability survived and by virtue of section 5152 attached to his estate in their hands, and became a charge or lien thereon from the date when the Alma bank suspended and was declared insolvent in November, 1890, if not, indeed, from the time of the qualification of the executors.

[13, 14] The proper decision of this case requires careful consideration of sections 5151 and 5152 in their relation to each other. The former section, subject to an exception or qualification not germane here, provides, among other things, generally, that the shareholders of every national bank "shall be held individually responsible" for all its contracts, debts and engagements, to the extent of the amount of their stock at the par value thereof in addition to the amount invested in such shares. Section 5152, as before stated, provides:

"Persons holding stock as executors, administrators, guardians, or trustees, shall not be personally subject to any liability as stockholders; but the estates and funds in their hands shall be liable in like manner and to the same extent as the testator, intestate, ward, or person interested in such trust funds would be, if living and competent to act and hold the stock in his own name."

Both sections deal with the subject of the double liability of stockholders of national banks, and each of them has for its purpose the enforcement of such liability. The variances between them are due to the essential difference in the circumstances under which they respectively are intended to operate. Considering them in their relation to a living stockholder, on the one hand, and, on the other, to the estate of a deceased stockholder, it is clear upon their face that Congress in their enactment had in view a practical, reasonable and consistent plan for the collection of assessments of the double liability. In the case of a living stockholder, the amount of the assessment against him was intended to be paid by him and suit could be maintained against him as a stockholder for its recovery whenever it matured. In the case of a deceased stockholder, who for the purpose of the payment of his share of the assessment was represented by his estate, it was intended that the statutory liability should attach to it in the hands of his executors or administrators as a charge or lien. And it fairly is to be assumed that as Congress intended individual responsibility of the stockholders to serve as security for the payment, in the case of a living stockholder, of his share of an assessment, so it equally intended such charge or lien to serve, in the absence of countervailing equities, as such security in the case of a deceased stockholder. Section 5152 expressly provides that "the estates and funds" in the hands of "persons holding stock as executors" shall be "liable in like manner and to the same extent as the testator * * * would be, if living and competent to act and hold the stock in his own name." This provision shows a legislative intent that the charge or lien upon the estate of a deceased stockholder in favor of the creditors of a national bank, shall, in the absence of superior countervailing rights or equities, be regarded and enforced equally as the individual responsibility of living stockholders. Further, section 5151 in providing for

double liability declares that the stockholders shall be "held individually responsible, equally and ratably, and not one for another," for the debts of a national bank; and that section when read in connection with section 5152 which, as before stated, also deals with the subject of the enforcement of the double liability, affords additional reason to support the conclusion that Congress intended the enforcement of the charge or lien upon the estate of a deceased stockholder equally with the enforcement of the individual responsibility of living stockholders to serve as means for the accomplishment of the purpose of the statute.

But it is contended on the part of the defendants that "the liability, if any, under the second assessment dates only from the order of the comptroller levying the assessment, and as there were [then] no funds in the hands of the executors, the executors were not liable," and further, that "as executors are not personally liable, but liable only to the extent of the estate and funds in their hands, it necessarily follows that they are not liable at all, if at the time the liability arose no estate or funds were in their hands." This contention is unsound and misleading. While the second assessment did not mature for the purposes of suit until December 22, 1900, when it became payable, the statutory liability for an amount covering that assessment attached as a charge or lien on the decedent's estate as early as November, 1890, on the declaration of insolvency of the Alma bank, if not as early as the date of his death. The double liability attached to the decedent's estate while in the hands of his executors, and, in view of this fact, it is unnecessary to discuss the second branch of the above contention. The real point involved in that contention taken as a whole resolves itself into the proposition that unless a decedent's estate or part of it is in the hands of his executors or administrators or under their control at the time an assessment of double liability becomes payable and when suit is instituted, there is nothing to sue for and consequently no decree can be rendered against them. Section 5152, it is true, expressly declares that "persons holding stock as executors * * * shall not be personally subject to any liabilities as stockholders," but "the estates and funds in their hands shall be liable," etc., but while it provides that persons so holding stock shall not be personally subject "as stockholders," it does not declare they shall not be liable personally as wrongdoers for breach of trust or violation of fiduciary duty in disposing of the estate in their hands in such manner as to deprive the creditors of the bank of the benefit of the charge or lien thereon created by that section for the purpose of securing payment to them of the statutory liability. The executors are trustees charged with the duty of disposing of the estate according to law and are guilty of a breach of trust in knowingly or negligently disregarding and defeating the right of creditors to the security conferred upon them by law with respect to the double liability. It is no answer to say that the statutory liability was the subject only of a charge or lien upon the decedent's estate, which was spent or dissipated or became "extinguished." One cannot take advantage of his own wrong, and such an objection does not lie in the mouth of the

wrongdoer. Executors are under an obligation to see to it that the funds in their hands shall not be squandered, wasted or otherwise improperly disposed of without payment of the double liability for which such funds are subject. If this be not the law one cannot readily perceive why an executor could not with perfect immunity from suit cast the most valuable part of an estate represented by him into the ocean knowing that it was subject to the statutory liability, and then claim immunity on the ground that it was not in his hands at the time an assessment became payable or when suit was instituted. The law will not countenance such a palpable evasion and absurdity. To compel an executor to account personally and individually for and pay to the receiver the amount of double liability represented by a charge or lien on the decedent's estate, lost through the wrongful act or negligence of the former, is to enforce payment of the double liability for the benefit of the bank's creditors within the broad intent of the statute, effects its purpose, and comes within the prayer for other and further relief. To hold the contrary would, it seems to me, stamp section 5152 as a lame and impotent piece of legislation, and present a reductio ad absurdum. It would logically result from the acceptance of the doctrine contended for that the enforcement of the charge or lien created by section 5152 could as above indicated be defeated through the mere whim of an executor, without liability on his part and regardless of disastrous consequences to creditors by transferring the estate held by him in a fiduciary capacity to third persons in such manner that its identity could not be established. Such a doctrine is an affront to right reason and shocks one's sense of justice. I do not know of any authority upholding it.

On the facts admitted or clearly proved there can be little or no doubt that the executors are jointly and severally liable to the receiver for the amount of the second assessment on the 150 shares of stock in question, together with interest as claimed, running from December 22, 1900, when the assessment became payable.

[15] The executors prior to the distribution of the estate had actual knowledge of the fact that these shares of stock belonged to that estate; for they charged themselves with them in the inventory and appraisement, verified April 20, 1892. They knew they were shares of a national bank. Knowing they were such shares and belonged to the decedent's estate they were put upon inquiry. They were bound to know the law and were chargeable with knowledge that the estate was subject to double or statutory liability as a charge or lien for the benefit of the creditors of the Alma bank. That the executors had cause to suspect the embarrassment or insolvency of the bank fairly may be inferred from the fact that the value assigned to the shares in the inventory and appraisement was only one-tenth of their par value. Although the executor, Miller, was examined as a witness, it does not appear from his testimony, or that of any other witness, that either he, or his co-executor, Baily, notwithstanding the above circumstance, at any time prior to the distribution of the estate made any inquiry as to the financial condition of the bank. They distributed in October, 1892, five months after charging themselves with the stock in ques-

tion, the net balance of the estate, amounting to $18,991.75, according to the terms of the decedent's will, without requiring either refunding bond or other security from those to whom such balance was distributed; the defendant Charles R. Miller receiving from and receipting to the estate for the sum of $4,747.44 on his own individual account October 6, 1892; the total amount of the second assessment against the estate involved in this suit being only $2,190, with interest from December 22, 1900. It may be noted in passing that while Miller testified that he had spent the share thus received by him he did not state when his share was so spent. But however this may be, the executors recklessly and at their own peril, without regard to the rights of the creditors of the Alma bank, and although possessing knowledge that the decedent's estate was chargeable with its share of the amount of any assessment which should be made by direction of the comptroller of the currency, disposed of that estate in the same manner as if they had never known that the decedent had been the owner of the 150 shares of stock, or that the same had passed to and were held by them as part of the estate, or that the Alma bank was embarrassed or insolvent. As between the innocent creditors of the Alma bank, on the one hand, and, on the other, Miller and Baily, who made such improper use of their office as executors without requiring security the equities of the case are wholly on the side of the former. Nothing that is here said is intended to convey the idea that either Miller or Baily intended in fact to defraud or wrong the creditors of the Alma bank. This court does not impute to them, or either of them, such a dishonorable or unworthy motive. But the course of conduct pursued by them, without actual wrongful intent, nevertheless constituted them wrongdoers and tort-feasors and as such jointly and severally liable, under the prayer for other and further relief, to the receiver for the benefit of the creditors of the Alma bank for the amount of $2,190 with interest as claimed.

I can perceive no reason why the law of devastavit is not as applicable to executors, holding them personally liable to those entitled to the benefit of the double liability on account of misapplication of the estate of a decedent, as it would be to executors for squandering or mismanaging a decedent's estate in cases not involving the enforcement of double liability. To draw a distinction between the two would establish a mischievous and hurtful precedent.

Counsel for the receiver have contended that under the second assessment the legatees and beneficiaries under the will of the decedent are, within the limits of the value of the portions of the estate respectively received by them, liable to pay to the receiver the several sums chargeable under that assessment against those several portions of the estate. But in view of the conclusion heretofore reached it is unnecessary now to enter into this inquiry. There is no evidence that any of the property of the decedent can now be traced to the possession of any of the beneficiaries under his will. Whether there may be a claim on the part of the executors for contribution from such legatees or beneficiaries is unnecessary now to consider. Their equities probably are wholly different from those of Miller and Baily. That under certain circumstances creditors of a decedent may, after final settlement

of his estate, proceed with all proper expedition for satisfaction of their claims out of portions of his estate in the hands of legatees or devisees is an old and well settled doctrine. This case, however, is concerned not with a claim originating at common law or under general principles of equity, but solely with the enforcement of the purely statutory right of double liability, and it may be material to observe in passing that none of the legatees or devisees of the decedent, excepting the executors, Miller and Baily, appear to have held any part of the 150 shares of stock of the Alma bank, and further that section 5152 refers to estates and funds in the hands of "executors, administrators, guardians, or trustees" but does not mention legatees or devisees.

Under the foregoing circumstances this court would not feel justified in decreeing against the legatees or devisees as such, but only against Miller and Baily jointly and severally as tort-feasors. Should they conceive they have a right to compel contribution, the decree to be entered in this case may be so framed as not to prejudice such right, if any they have. A decree must be entered against Charles R. Miller and James Baily holding them jointly and severally liable to the complainant in the sum of $2,190, together with interest thereon from December 22, 1900, at the rate of 6 per cent. per annum, and further requiring the said two defendants to pay within thirty days from the date of such decree the costs of this suit and the moneys and interest thereby decreed to be paid, or attachment.